In the Interest of S.L., A.C., D.C.,
R.A. & L.P., Plaintiffs.

JUVENILE OFFICER, Respondent,

v.

R.C.M. Appellant.

WD 47728.

Missouri Court of Appeals,
Western District.

Feb. 15, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1994.

Application to Transfer Denied
April 26, 1994.

Leonard K. Breon, Warrensburg, for appellant.

John H. Edmiston, Warrensburg, Guardian ad Litem.

Lance A. Riddle, Warrensburg, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

Appellant R.M. is the mother of five children who are the subject of this proceeding. In early October, 1991, R.M. traveled from San Bernardino, California, to Johnson County, Missouri with her boyfriend and her five children. The children ranged in age at that time from ten months to six years. Several days after arrival in the State of Missouri, the Division of Family Services took the children into emergency protective custody. The juvenile division ordered the children into the custody of the Division of Family Services on the basis of the threat of immediate harm to the children from abuse and neglect.

Appellant R.M. initially told social workers she planned to stay at her mother's residence in Johnson County, Missouri, and eventually establish her own residence in Johnson County. A short time later, she left her mother's home and went to a shelter. R.M. was then arrested in Johnson County on old charges of insufficient funds checks. R.M. was not permitted by the operator of the shelter to return to the shelter. She did not request assistance from the case workers assigned to this matter, and instead canceled an appointment scheduled for October 28, 1991. On November 8, R.M. called from California, indicating that she had returned to California. She stated she planned to request that the children be placed in California if not returned to her.

For a month or so R.M. called once a week to inquire about the children. Although R.M. had neither a job nor a home in California, she did not return to Missouri.

Petitions were filed by the juvenile officer November 8, 1991, one month after the children were taken into protective custody. On November 18, 1991, R.M.'s attorney filed a motion to dismiss on the ground that the court in Missouri did not have subject matter jurisdiction because, under the Uniform Child Custody Jurisdiction Act, California is the state having jurisdiction. The motion stated:

> The natural mother and juveniles are residents of the State of California. It is the undersigned attorney's understanding that the State of California juvenile authorities will be taking custody of these children through the juvenile court of the State of California. For this latter reason, this court lacks subject matter jurisdiction by virtue of the Uniform Child Custody Jurisdiction Act, Section 452.440, et seq., RSMo 1986. Missouri is simply not the state of these children's closest connection and jurisdiction should be declined in favor of California.

On January 14, 1992, the juvenile division conducted a hearing concerning the disposi-

tion of the children. Appellant R.M. appeared in person and by her attorney. We have not been furnished a transcript of that proceeding. However, the order shows that the court proceeded to address the issues of the petition. The court found an ongoing threat of further physical and emotional abuse due to the mother's drug usage, lack of dental care, physically abusive discipline, and physical unsuitability of her home. The court found it was in the best interests of the children for the court to take jurisdiction, for custody to be placed with the Division of Family Services for actual placement in foster care. The court ordered the mother to comply with the terms of a proposed written service agreement. The court did not directly address the issue of jurisdiction raised by R.M.'s motion filed in November. Since we have no transcript, we do not know what evidence was presented with regard to jurisdictional issues. Also, the record does not indicate whether R.M. contested the issues of abuse and neglect. No appeal was taken from that adjudication. Ten months later, in October, 1992 (one year after the children were first taken into protective custody), R.M. filed a "Motion for Custody and/or Supervised Visitation." The next day that motion was withdrawn. Several days later, R.M. filed another motion challenging the jurisdiction of Missouri courts over the custody of the children.

On April 14, 1993, the motion as to jurisdiction was called up for hearing. The facts were submitted by way of stipulation, and the parties argued their legal positions. Included in the stipulation were the following:

1. That DFS caseworker, Renee Anderson, if called to testify, would testify that R.M. admitted to her that she had come from California to Missouri with the intention of leaving S.L. (the six year old girl) in Missouri, with either of two named relatives.

2. The children were without proper care and treatment within Johnson County, Missouri, on October 8, 1991, which in-

duced the Juvenile Officer to assume protective custody of the children.

3. The court's order of January 14, 1992, taking jurisdiction over the children was not appealed.

4. That from October 8, 1991 to April 14, 1991, D.C. (the three year old boy) has made disclosures that have implicated R.M.'s boyfriend in D.C.'s sexual abuse within the State of California.

5. That R.M. has maintained a residence in California for herself and her children from before October 6, 1991, through April 14, 1993. R.M. maintained a residence in Missouri from November 14, 1987 through March 16, 1988, and from August 21, 1989 through November 22, 1989.

6. A psychologist who has been treating S.L., A.C. and D.C. would testify that removal from foster care in Missouri would be emotionally traumatic, would make reunion with their natural mother less likely to be successful, and might permanently preclude their emotional attachment. The psychologist would further testify that removal of D.C. from foster care would create a substantial risk of irreparable damage to his psychosexual development.

The trial court denied the motion for dismissal or transfer to California. It ordered the Department of Family Services to cause a home study to be conducted as to the home of R.M. in California and to report back to the court. It is from the denial of R.M.'s motion challenging jurisdiction that she appeals.

R.M. argues on appeal that the UCCJA (Uniform Child Custody Jurisdiction Act) applies and that the initial exercise of jurisdiction, while perhaps justifiable under the "emergency" provisions of the UCCJA,[1] nevertheless expired when the emergency disappeared, and that the court lost jurisdiction to make an indefinite placement. R.M. is, in effect, re-arguing her motion of November 18, 1991.

1. The act authorizes a state which is not the home state of the child to take jurisdiction when "necessary in an emergency to protect the child

because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected." § 452.450.1(3)(b) RSMo 1986.

While no reported Missouri case has held that the UCCJA applies to juvenile proceedings of abuse and neglect, we will assume for purposes of this appeal that the act does apply since the parties are persuaded that it applies. In other states, the courts appear to have uniformly applied the UCCJA to juvenile neglect proceedings. *See, e.g., Renno v. Evans*, 580 So.2d 945 (La.App.1991); *N.J. Div'n of Youth & Family Services v. E.E.*, 233 N.J.Super. 401, 558 A.2d 1377 (1989).

The issue of jurisdiction, as that jurisdiction may be affected by the UCCJA, was raised prior to the dispositional hearing, and necessarily adjudicated in the dispositional hearing. *See In re Joseph D.*, 19 Cal.App.4th 678, 23 Cal.Rptr.2d 574 (1993) (juvenile court conduct of a dispositional hearing as though the case were a typical dependency proceeding rather than an interstate custody matter was inconsistent with temporary nature of emergency jurisdiction as envisioned by the UCCJA). *See also Piedimonte v. Nissen*, 817 S.W.2d 260 (Mo.App.1991) (emergency jurisdiction under UCCJA is only for emergencies and is temporary in nature). It is implicit in the scheme of the UCCJA that the court make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody. *Piedimonte v. Nissen*, 817 S.W.2d 260 (Mo.App.1991). That was not done in this case, but no appeal was taken from the trial court's orders of January 14, 1992, in which the court exercised jurisdiction over the minors and ordered their placement indefinitely in the custody of the Department of Family Services for foster home placement. In view of the circumstances of this case, we hold that the issue has been finally adjudicated. We rely upon the facts submitted to the court by way of stipulation in the April 14, 1993, jurisdictional hearing. We also rely upon the motion to dismiss filed November 18, 1991, by R.M.'s attorney, which raised the issue of jurisdiction under the UCCJA. The issue of subject matter jurisdiction is finally resolved and is not subject to further review.

In this case there was jurisdiction for the court to enter its order of protective custody. The abusive and neglectful conditions were persisting in Missouri. Missouri had emergency jurisdiction to enter temporary orders related to the care and custody of the children. *Piedimonte v. Nissen*, 817 S.W.2d 260 (Mo.App.1991).

The issue of the court's subject matter jurisdiction to make anything more than a temporary disposition of the children was raised and adjudicated on January 14, 1992, and no appeal was taken from that adjudication. Had an appeal been promptly taken from that adjudication, this court would not find itself now, more than two years after the motion was filed, dealing with arguments concerning jurisdiction. Although subject matter jurisdiction cannot be established by waiver, and lack of jurisdiction can be raised at any time, the principle of *res judicata* prohibits re-assertion of alleged jurisdictional defects where the issue has been finally adjudicated. *State ex rel. Agri–Trans Corp. v. Nolan*, 756 S.W.2d 203 (Mo.App. 1988) (federal court determination of its subject matter jurisdiction which was not appealed was *res judicata* in state proceeding). "A court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, *while open to direct review*, is *res judicata* in a collateral action." *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 377, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940) (emphasis added). We believe the same principle of *res judicata* should apply to a subsequent proceeding in a juvenile case, when the first adjudication on jurisdiction was not appealed.

An express determination of subject matter jurisdiction is not required to preclude a subsequent, collateral attack on jurisdiction. *State ex rel. Agri–Trans Corp. v. Nolan*, 756 S.W.2d at 206. It is enough that the issue was raised in the earlier proceeding. *Id.* Any other rule would mean there is no finality to any judgment in which subject matter jurisdiction may be questioned. For instance, in this case, instead of appealing the ruling of April, 1993, R.M. could file a new motion, then fail to appeal the denial of her motion, and then continue to file new motions *seriatim* attacking jurisdiction. There must be an end to litigation on jurisdictional issues at some point. A

custody decree is normally subject to modification in the interest of the child and does not have absolute finality, but as long as it has not been modified, it is as binding as a final judgment. A trial court adjudication which is not appealed is no less final than a determination on appeal.

It is a matter of grave concern in a case such as this that jurisdictional issues be resolved promptly. For example, all parties in this case acknowledge that removal of the children from their foster homes at this point would be extremely traumatic and damaging to them. To entertain arguments as to jurisdiction at this point would be to thwart one of the fundamental purposes for which the UCCJA was adopted in the first place.

> It does not require an expert in the behavioral sciences to know that a child, especially during his early years and the years of growth, needs security and stability of environment and a continuity of affection. A child who has never been given the chance to develop a sense of belonging and whose personal attachments when beginning to form are cruelly disrupted, may well be crippled for life, to his own lasting detriment and the detriment of society."

Prefatory Note, Uniform Child Custody Jurisdiction Act, 9 Uniform Laws Annotated (1988, West) p. 116.

In view of all of the foregoing factors, we hold that R.M.'s current appeal of the denial of her challenge to the continuing jurisdiction of the Juvenile Division of the Circuit Court of Johnson County, Missouri must be dismissed.

Appeal dismissed.

All concur.