1999 SD 160

**Cynthia R. WESTON, f/k/a Cynthia R. Jones, Plaintiff and Appellee,**

v.

**Gordon E. JONES, Jr., Defendant and Appellant.**

**No. 20958.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Dec. 22, 1999.

John A. Shaeffer, Flandreau, South Dakota, Attorney for plaintiff and appellee.

Gordon E. Jones, Jr., Pro se defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Gordon Jones appeals from an order denying his motion to vacate the court's judgment and decree of divorce for lack of subject matter jurisdiction. For the reasons set forth below, we affirm.

### Facts and Procedure

[¶ 2.] Cynthia Weston[1] and Gordon Jones were married August 31, 1991 in Flandreau, South Dakota. Two children were born of this marriage. In 1995, the parties separated. On February 26, 1996, by service of a summons and complaint, Weston commenced a divorce action against Jones in circuit court in Moody County, seeking division of property, child custody, and child support. Jones answered, stating, *inter alia,* that the parties and their two minor children were enrolled tribal members residing on Flandreau Santee Indian trust land and that all of their property was located within these boundaries. He did not pursue this jurisdictional issue further in the divorce action.

[¶ 3.] In May 1996, the parties entered into a settlement agreement that addressed their property, custody and support issues. The circuit court entered a judgment and decree of divorce on June 10, 1996, incorporating the parties' agreement. Neither party appealed from this judgment. In 1998, Jones twice sought modification of his child support obligation in circuit court. Following hearings on these separate motions, orders were entered modifying child support.

---

1. "Weston" is Cynthia's maiden name, which was restored to her in the judgment and decree of divorce.

[¶ 4.] On January 5, 1999, two and one-half years after the divorce was final, Jones filed a motion in circuit court to dismiss the judgment and decree of divorce for lack of subject matter jurisdiction or, in the alternative, transfer the matter to tribal court. Following a hearing, the circuit court denied the motion. Jones appeals.

## Analysis and Decision

[¶ 5.] Both Jones and Weston are enrolled members of the Flandreau Santee Sioux Tribe as are their two minor children. They reside on Indian trust lands and did so prior to their divorce. All of their property, including their marital home, was located on tribal trust land. All four family members receive a monthly allotment from the tribe, the children's monies being placed in trust for their benefit. The tribe employed both parties at the time of their divorce. Jones was secretary of the tribe's executive council, an elected position. Weston does not dispute these facts but argues that Jones is estopped from attacking the parties' divorce decree on jurisdictional grounds because he submitted himself to state court jurisdiction at the time of the parties' divorce and at two subsequent hearings regarding child support modification.

[¶ 6.] It is recognized that "domestic relations among its members is an important area of 'traditional tribal control.'" *Byzewski v. Byzewski*, 429 N.W.2d 394, 399 (N.D.1988) (citing *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 889, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986); *Fisher v. District Court*, 424 U.S. 382, 388–89, 96 S.Ct. 943, 947–48, 47 L.Ed.2d 106 (1976); *United States v. Quiver*, 241 U.S. 602, 603–04, 36 S.Ct. 699, 700, 60 L.Ed. 1196 (1916); F. Cohen, Handbook of Federal Indian Law at 249 (1982)). *See also Conroy v. Conroy*, 575 F.2d 175, 182 (8thCir.1978) ("[T]he power of a tribe to regulate the domestic relations of its members, historically well established, remains undisturbed."). It is further recognized that a judgment of a court without subject matter jurisdiction is void. *State ex rel. Freeman v. Sadlier*, 1998 SD 114, ¶ 10, 586 N.W.2d 171, 174 (citing *In re M.A.C.*, 512 N.W.2d 152, 154 (S.D.1994)).

[¶ 7.] There is another principle, however, based on estoppel, that has been long applied in divorce actions. It holds that one who obtains a judgment cannot later collaterally attack it on jurisdictional grounds. 1 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 13.3 (2d ed. 1987) (collecting cases at n. 13).

> To put the principle in concise form, if the person attacking the divorce is, in doing so, taking a position inconsistent with his past conduct, or if the parties to the action have relied upon the divorce, and if, in addition, holding the divorce invalid will upset relationships or expectations formed in reliance upon the divorce, then estoppel will preclude calling the divorce in question.

*Id.* at 744. The Restatement (Second) of Conflict of Laws § 74 (1971) provides an even broader extension of this rule: "A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." This principle is founded in the spirit of equity and common sense. It puts "finality" for the sake of the persons involved above the right to broach legal obstacles that could have been raised earlier but were not. Finality in divorce cases is particularly imperative. Imagine the upheaval in familial relationships should one be able to disrupt a long-rested decree with new questions about its validity. The narrow issue in this appeal, therefore, is not whether the state court had subject matter jurisdiction over the Jones–Weston divorce. The question is can Jones, an active participant in the state divorce action and the proponent of two later motions based on the decree, be estopped from attacking it now on jurisdictional grounds.

[¶ 8.] This same equitable principle was applied in *Scherer v. Scherer*, 405 N.E.2d

40 (Ind.Ct.App.1980). In *Scherer*, a husband and his wife had been divorced in a court in the Dominican Republic. The wife appeared personally in that action while the husband voluntarily appeared by special power of attorney executed for the express purpose of obtaining a divorce. *Id.* at 43. Before the divorce, the parties had executed an agreement, drafted by the husband's attorney, dividing their property and settling their child custody, visitation and support issues. This agreement was incorporated into the decree of divorce. Seven months later, the husband filed for a divorce and dissolution of property in the state of Indiana claiming the earlier divorce was invalid.[2] The Indiana court affirmed summary judgment for the wife, holding "if both parties to a marriage submit to the jurisdiction of another state for the purpose of obtaining a divorce they are estopped from attacking the decree by virtue of their participation." *Id.* The court found the husband's position was inconsistent with his conduct both before and after the divorce. *Id.* at 46. *See* Restatement § 74, *supra*, cmt b ("Such inequity [precluding a jurisdictional challenge] may exist when action has been taken in reliance on the divorce or expectations are based on it or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party."). The *Scherer* court noted that in affirming the summary judgment, it did not address the validity of the Dominican Republic decree but merely held that the husband was estopped from challenging its validity. *Id.* at 48.

[¶ 9.] In *Webb v. Webb*, 461 S.W.2d 204 (Tex.Civ.App.1970), a husband and wife obtained a divorce in Mexico. After the husband remarried, his ex-wife complained to the Texas court that Mexico did not have jurisdiction of the parties at the time of the divorce and therefore the divorce decree was void. The district court judge

agreed and, by instructed verdict, decreed both the Mexican divorce and the husband's subsequent marriage invalid and that the husband was still married to his first wife. The Texas Court of Civil Appeals reversed and remanded the action for a new trial, noting that both parties had participated in and consented to the divorce and had invoked the Mexican court's jurisdiction by their participation. The divorce decree made express findings that the court had jurisdiction of the case. The court stated:

> By jointly petitioning the Mexican court for a divorce, the parties thereto necessarily represented to the court that all conditions precedent to the exercise of the court's jurisdiction, including residential requirements, were satisfied. If such jurisdictional facts did not exist, a fraud was perpetrated upon the Mexican court.

*Id.* at 205–06.

[¶ 10.] The case before this Court shows some factual similarities to the findings in *Scherer* and *Webb*, above. Although Jones' answer to his wife's complaint raised the issue of jurisdiction, he did not pursue it further. The parties together resolved their property, child support and custody issues and their agreement was incorporated into the judgment and decree. Prior to entry of the decree of divorce on June 10, 1996, both parties signed and filed with the state circuit court a joint affidavit "for the express purpose of establishing jurisdiction and grounds for divorce." The record contains no evidence and Jones makes no claim that Weston lured him into state court. The court expressly stated in the judgment and decree of divorce that it had both personal and subject matter jurisdiction in this action. As the Texas court noted in *Webb*, if the court did not have jurisdiction, then the

---

**2.** Although the husband told his wife of his plans to remarry and publicly accepted congratulations from friends, he also indicated to several people that he wished the couple had never divorced; the wife married the husband's attorney three months after the Dominican Republic divorce, the same attorney who drafted their settlement agreement. *Id.* at 46.

parties, by their active participation in seeking a divorce from this court perpetrated a fraud upon the court.

[¶ 11.] Here, too, the conduct of the parties after the divorce supports affirmance of the circuit court's order refusing to vacate the judgment and decree of divorce. Weston requested and obtained the return of her maiden name in the decree. Although the record does not indicate that either party has remarried, it must be assumed that they have relied upon the decree, formed expectations based upon it, and enjoyed benefits consistent with their unmarried status. Jones certainly relied upon the decree and the jurisdiction of the state when he brought two separate motions in circuit court seeking to reduce his child support obligation. Two and one-half years later, he seeks to have this judgment and decree, upon which both parties have relied, vacated. Jones was fully aware that tribal court was available to him and though he initially raised the issue of jurisdiction in state court, on his own volition he dropped it and never raised it again until long after the divorce was final.

[¶ 12.] We find that all three factors underlying the policy precluding Jones' attack on the divorce decree are present in this case: (1) his challenge to the divorce is inconsistent with his prior conduct, both before and after the decree was entered; (2) both parties here have relied upon the divorce and formed expectations based upon it; and (3) these expectations would be upset if the June 10, 1996 judgment and decree of divorce were vacated. Like the *Scherer* court, we decline to address the validity of the Jones–Weston divorce decree because, under these facts, Jones is estopped from attacking it collaterally.

[¶ 13.] We affirm.

[¶ 14.] AMUNDSON and GILBERTSON, Justices, concur.

[¶ 15.] MILLER, Chief Justice, concurs specially.

[¶ 16.] SABERS, Justice, dissents.

MILLER, Chief Justice (concurring specially).

[¶ 17.] Although I concur with the majority opinion, I write specially to react to the comments in the dissent. The dissenting opinion espouses a bright-line rule, declaring that the state has *no* subject matter jurisdiction over *any* case if both parties are Indians residing on a reservation. I respectfully suggest that the dissent over-simplifies an otherwise complicated legal issue involving difficult and important historical considerations.

[¶ 18.] The dissent's sweeping endorsement of such bright-line rule concerning subject matter jurisdiction is simply not appropriate in all situations. In the recent past, our state courts granted divorces to hundreds if not thousands of Indian parties domiciled on reservations. In so doing, the state courts accommodated the Indian parties because there was no tribal forum, or because the tribal laws did not grant to the tribal forum jurisdiction over such matters. To blindly adopt the dissenting opinion would tell everyone impacted by those divorce decrees, who have been relying upon the state-granted divorce judgment for years, that their divorces, including child custody and property issues, are void.

[¶ 19.] Although tribal courts are of "growing significance and importance throughout Indian country and particularly here in South Dakota," Frank Pommersheim, South Dakota Tribal Court Handbook 1 (Rev.Ed. 1992)[hereinafter Tribal Court Handbook], they are generally less than fifty years old. *Id.* at 3. In fact, the Lower Brule Sioux Tribe did not enact a divorce code until 1982. Lower Brule Sioux Tribe, Ordinance LB–82–A (Jan. 7, 1982). Further, in 1980 there were no domestic relations or divorce provisions included in the Rosebud Sioux Tribe's "Proposed Revised Tribal Law and Order Code." Indian Tribal Codes: A Microfiche Collection of Indian Tribal Law Codes R3

(Ralph W. Johnson et al. eds. 1980).[3] Moreover, as recently as 1992 there were still two "CFR"[4] courts on reservations in South Dakota. Tribal Court Handbook at 2. Until the CFR was amended six years ago, these courts did not have jurisdiction over domestic relations, probate proceedings, or children's matters (guardian ad litem, abuse and neglect proceedings).[5] Compare 25 CFR § 11 (1992) with 25 CFR § 11 (1994); see also 58 Fed.Reg. 54406 (1993) (proposed regulations to revise laws in CFR courts; proposals were ultimately adopted and codified at 25 CFR § 11).

[¶ 20.] The dissent does not address the situation where a tribe cannot (or could not) judicially exercise jurisdiction over its internal affairs because there is (was) no tribal court or because the tribal court has not (had not) been granted jurisdiction by its own government. In such cases, not only is it permissible, but it is only appropriate and just for state courts to accept and exercise jurisdiction. Otherwise, a legal vacuum would exist to the significant detriment of our South Dakota Indian citizens who are domiciled on the reservations.

[¶ 21.] The United States Supreme Court acknowledged such a situation without deciding how to handle it in Fisher v. District Court of the Sixteenth Judicial District, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). In Fisher, the Supreme Court found the tribe to have exclusive jurisdiction over an adoption proceeding, where all parties were Indians residing on a reservation. Fisher, 424 U.S. at 389, 96 S.Ct. at 948, 47 L.Ed.2d at 113. In overruling the Montana Supreme Court's assertion of jurisdiction, the Court stated inter alia that adoption is an internal matter and that exercise of state jurisdiction would be an infringement upon the inherent right of tribal self-governance. Fisher, 424 U.S. at 387, 96 S.Ct. at 947, 47 L.Ed.2d at 112. Accord Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959); Kennerly v. District Court of Montana, 400 U.S. 423, 426–27, 91 S.Ct. 480, 482, 27 L.Ed.2d 507, 511 (1971) (per curiam). Because the tribal ordinance which authorized the creation of a tribal court was sanctioned by § 16 of the Indian Reorganization Act, 25 USC § 476, the Fisher court reasoned that such creation of a tribal court system under federal direction was "clearly adequate to defeat state jurisdiction over litigation involving reservation Indians." Fisher, 424 U.S. at 390, 96 S.Ct. at 948, 47 L.Ed.2d at 113. The Court further surmised, "even if we assume that the Montana courts properly exercised adoption jurisdiction prior to the organization of the Tribe, a question we do not decide, that jurisdiction has now been preempted." Id. (emphasis added). Thus, the Court contemplated that if a tribe did not have an organized tribal court, then perhaps state jurisdiction was proper.

---

3. Since 1980, Rosebud Sioux Tribe has enacted a domestic relations code, but the exact date of enactment is unclear. Indian Tribal Codes: A Microfiche Collection of Indian Tribal Law Codes R3 (Ralph W. Johnson et al. eds. 1988).

4. "CFR" stands for the Code of Federal Regulations. CFR courts are governed by Title 25 of the CFR, and are direct successors to the federally created Courts of Indian Offenses that were prevalent on reservations in the late nineteenth and early twentieth centuries. CFR courts are much more restricted in their authority than tribal courts established pursuant to tribal authority. Tribal Court Handbook at 2 n. 10.

5. That tribal courts are a relatively new institution of justice has also been recognized by the United States Supreme Court. See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14–15, 107 S.Ct. 971, 975–76, 94 L.Ed.2d 10, 19 (1987) (federal government has consistently encouraged the development of tribal courts); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 65, n. 21, 98 S.Ct. 1670, 1681, n. 21, 56 L.Ed.2d 106, 120 n. 21 (1978) (of the 287 tribal governments in operation in the United States, 117 had operating tribal courts in 1976); and United States v. Wheeler, 435 U.S. 313, 327, n. 25, 98 S.Ct. 1079, 1088, n. 25, 55 L.Ed.2d 303, 315 n. 25 (1978) (Navajo tribal courts were established in 1958).

[¶ 22.] The Montana Supreme Court addressed the issue more directly in *In re Marriage of Limpy*, 195 Mont. 314, 636 P.2d 266 (1981). There, the court held because a tribe had established a functioning forum to adjudicate issues of child custody, there was no basis for the state to assume jurisdiction over a child custody action involving two Indians residing on a reservation. However, the court theorized that "if there were no Tribal forum, it is difficult to see how the exercise of jurisdiction by a State court would infringe on Tribal self-government." *Id.* at 269. The *Limpy* court cited another Montana case in support of this statement, *Little Horn State Bank v. Stops*, 170 Mont. 510, 555 P.2d 211 (1976), *cert. denied*, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977). In *Little Horn*, state enforcement of a state judgment on a reservation was upheld where the tribe had no means of enforcing the same. *Id.* at 214. In *Little Horn*, the rationale for allowing state enforcement was that in the absence of a tribal mechanism for enforcing a state judgment, there was no infringement on tribal self-government. *Id.*

SABERS, Justice (dissenting).

[¶ 23.] The majority opinion holds that even though the state court did not have jurisdiction over Jones' divorce, the parties, by active participation in seeking a divorce, are estopped from attacking the divorce on jurisdictional grounds.

[¶ 24.] In 1985, we addressed the issue of whether a state court has subject matter jurisdiction over a guardianship matter involving enrolled members of an Indian tribe. After holding that the state court had no subject matter jurisdiction, we stated:

In reaching our decision, we have not overlooked the argument that [defendant] waived his right to contest state court jurisdiction or consented to the jurisdiction of the state court by entering a general appearance.

It has long been the rule in this state that 'where the court has no jurisdiction of the subject-matter of the action, jurisdiction cannot be given to such court by any act of the parties, even by joint stipulation....' In *Honomichl v. State*, 333 N.W.2d 797, 799 (S.D.1983), we restated the general rule that 'subject matter jurisdiction cannot be conferred by agreement, consent, or waived.'

*In re Guardianship of Sasse*, 363 N.W.2d 209, 212 (S.D.1985) (internal citations omitted). This court concluded that "[a] judgment which a court had no jurisdiction to pronounce is void and may be attacked at any time either directly or collaterally." *Id.* (citations omitted).

[¶ 25.] In *Wells v. Wells*, 451 N.W.2d 402, 405 (S.D.1990), the wife left the reservation to reside in Rapid City where she filed for divorce. We set forth the test for determining whether a state court may assume jurisdiction over claims involving Indians: "the question has always been whether the state action [would infringe] on the right of reservation Indians to make their own laws and be ruled by them." *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959)). Based on the fact that the wife moved off the reservation prior to filing for divorce, we found that the state court's exercise of jurisdiction went beyond reservation affairs; in fact, we recognized that "all operative facts ... did not occur solely on the reservation." *Id.* We noted:

Just as South Dakota does not retain exclusive jurisdiction over the marriage of South Dakota citizens who leave the state, the tribe does not retain exclusive jurisdiction over the marriage of its members who leave the reservation.

*Id.* Therefore, the *Wells* court concluded that "when one spouse is domiciled off the reservation a state court may entertain a divorce action without infringing upon tribal sovereignty." *Id.* at 406.

[¶ 26.] The *Wells* court also distinguished many cases cited by the husband: "all of these cases differ from *Wells* in one

significant way – *all* the Indian parties were domiciled on a reservation." *Id.* at 406 (emphasis in original). "Unquestionably, in such a situation a state court would lack subject matter jurisdiction, but such is not the case here." *Id.*

[¶ 27.] Justice Henderson concurred in result in the *Wells* case. He insightfully noted:

'All too often, courts seem to pay little more than lip service to the right and power of Indian peoples to govern themselves.' We do not have subject matter jurisdiction over disputes in domestic relation cases of Indian people and we must zealously guard against any type of creeping encroachment thereon.

*Id.* at 407 (Henderson, J., concurring in result) (citations omitted). "State court actions which undermine the authority of tribal courts are an impermissible infringement upon the right of tribal self government." *Id.* at 409 (Henderson, J., concurring in result) (citing *Williams*, 358 U.S. at 223, 79 S.Ct. at 272, 3 L.Ed.2d at 255.)

[¶ 28.] Shortly after the *Wells* case, this court addressed a custody dispute between a non-Indian father and an Indian mother. We stated:

The [S]tate of South Dakota has no general civil jurisdiction over Indians on reservations within its borders. *Clearly, if this were a custody dispute between two enrolled members of tribe domiciled on reservation, the subject matter jurisdiction of the tribal court would be exclusive.*

*Harris v. Young*, 473 N.W.2d 141, 144 (S.D.1991) (internal citations omitted) (emphasis added).

[¶ 29.] It is clear that this court has consistently recognized that a tribal court would have exclusive subject matter jurisdiction if both parties to a suit were domiciled on Indian land. Presented now with such a fact pattern, the majority opinion circumvents the law and jurisdiction through estoppel. For at least the past 19 years, was this mere lip service to the

right and power of Indian people to govern themselves?

[¶ 30.] The majority opinion fails to cite a case where estoppel was invoked to prevent an Indian tribal member domiciled on Indian land from raising the defense of lack of subject matter jurisdiction. Nor am I aware of any. It is true that estoppel is used to some extent when out of state or foreign divorce proceedings are involved. However, given the unique situation between the state and tribal courts, it is inappropriate to use estoppel here as a mechanism to impede upon tribal sovereignty.

[¶ 31.] In this case, both parties and their children are enrolled members of the Flandreau Santee Sioux Tribe. They are all domiciled on Indian trust land, as the parents were prior to their divorce. Their property is located on tribal trust land, they receive monthly allotments from the tribe and they were domiciled on the reservation before, during and after the divorce proceedings. Clearly, a divorce between these two parties is a "reservation matter." As stated in *Wells* : "Unquestionably, in such a situation [where '*all* the Indian parties were domiciled on a reservation'] a state court would lack subject matter jurisdiction...." *Wells*, 451 N.W.2d at 406. "[S]ubject matter jurisdiction cannot be conferred by agreement, consent, or waiver." *In re Guardianship of Sasse*, 363 N.W.2d at 212 (quoting *Honomichl*, 333 N.W.2d at 799). To conclude that Jones is estopped from arguing that the state court lacked subject matter jurisdiction over the divorce proceeding impermissibly infringes upon the right of tribal self government. In other words, estoppel would constitute a "creeping (or leaping) encroachment" on the tribal court's exclusive right to govern Native American Indians residing on the reservation.

[¶ 32.] In addressing this case, one of the majority opinion's concerns was to prevent the "bus loads" of Native American Indians who obtained divorces in state court years ago from thwarting those divorce

decrees. My response is simply that that fact pattern is not before us now and we should reserve ruling on that matter until it is. This divorce was entered on June 10, 1996, a day and age where the law clearly provided that tribal courts have *exclusive* subject matter jurisdiction over two Native American Indians domiciled on Indian land.

[¶ 33.] For years, the law was that:

Subject matter jurisdiction can not be conferred by consent.

Subject matter jurisdiction can not be conferred by agreement.

Subject matter jurisdiction can not be conferred by stipulation.

Subject matter jurisdiction can not be conferred by waiver.

[¶ 34.] In fact, because jurisdiction can not be waived:

The lack of jurisdiction can be raised at any time.

By anybody, any time, any place.

[¶ 35.] In fact, as recently as May 26, 1999, this court claimed that jurisdiction must be raised sua sponte.[6]

[¶ 36.] But, not anymore, because now we have jurisdiction by estoppel.

[¶ 37.] I dissent.

---

**6.** *Decker v. Tschetter Hutterian Brethren,* 1999 SD 62, ¶ 14, 594 N.W.2d 357, 362 (plurality opinion by Gilbertson J., joined by Miller C. J., and Konenkamp J., stating "this court is required *sua sponte* to take note of jurisdic-tional deficiencies, whether presented by the parties or not . . . .") (quoting *State v. Phipps,* 406 N.W.2d 146, 148 (S.D.1987) (citations omitted)).