2005 SD 67

**Dolly Mae WELLS, Plaintiff and Appellee,**

v.

**William W. WELLS, Defendant and Appellant.**

**No. 23336.**

Supreme Court of South Dakota.

Considered on Briefs March 21, 2005.

Decided June 1, 2005.

Lawrence E. Long, Attorney General, Pierre, South Dakota, H. Richard Church-well, Special Assistant Attorney General, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Terry L. Pechota, Rapid City, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this appeal, an Indian tribal member residing on a reservation seeks relief from a 1991 state court judgment awarding child support. He contends that the judgment is void for lack of personal and subject matter jurisdiction. The circuit court refused to vacate the judgment. Because the father fully litigated the question of jurisdiction before the judgment was entered and then abandoned his appeal, we affirm the circuit court's ruling that the 1991 judgment is res judicata.

### Background

[¶ 2.] William W. Wells and Dolly Mae Wells were married in May 1980, in Pierre, South Dakota. They lived together on the Crow Creek Reservation in Buffalo County. Both are enrolled members of the Crow Creek Sioux Tribe. In April 1987, no longer able to endure William's domestic abuse, Dolly fled the reservation with their five children. She was pregnant at the time with the parties' sixth child. She and the children eventually took up residence in Rapid City.

[¶ 3.] William started a divorce action in the Crow Creek Sioux Tribal Court. Under the tribal code, personal service of the summons and complaint was required. Because William did not know where Dolly went after leaving the reservation, he was unsuccessful in arranging to serve her personally.

[¶ 4.] In August 1987, Dolly brought a divorce action against William in circuit court in Pennington County. William then served her attorney by mail with a copy of his summons and complaint. The tribal court accepted this as adequate service, entered a default divorce decree against Dolly, and awarded William custody of the children.

[¶ 5.] In September 1987, Dolly was able to obtain service on William through the Buffalo County Sheriff's Office. William was served the divorce summons and complaint while he was residing on the Crow Creek Reservation. He appeared specially in circuit court to contest the sufficiency of service. The circuit court dismissed Dolly's action because the Buffalo County Sheriff had no jurisdiction to serve an enrolled member of the Crow Creek Sioux Tribe on the reservation.

[¶ 6.] In March 1988, Dolly brought a new divorce action against William in circuit court. In this second suit, William was served by a tribal policeman whose return of service stated that he was an enrolled member of the Crow Creek Sioux Tribe. In another special appearance, William again moved to dismiss the case, arguing that the marriage had already been dissolved and that the circuit court lacked subject matter jurisdiction over the case. The circuit court denied William's motion, finding that the tribal court divorce decree could not be recognized because of William's failure to personally serve Dolly in accordance with the tribal code. The court found that it had concurrent subject matter jurisdiction with the tribal court.

[¶ 7.] On intermediate appeal, this Court affirmed: the tribal court divorce

decree did not warrant recognition through principles of comity, and the circuit court had subject matter jurisdiction of the divorce proceedings. *Wells v. Wells,* 451 N.W.2d 402 (S.D.1990). Left undecided were questions of jurisdiction for purposes of awarding child custody, alimony, and child support. Dolly then continued with her divorce action against William in state court. The circuit court granted a divorce to Dolly in July 1991. She was awarded custody of the children, and William was ordered to pay child support of $650.00 per month.

[¶ 8.] On September 17, 1991, William filed a pro se notice of appeal in state court. In his docketing statement, he asserted, among other things, that the circuit court lacked personal jurisdiction over him and subject matter jurisdiction over the action. William abandoned his appeal, however, when he never ordered a transcript and failed to file and serve a brief. On November 14, 1991, his appeal was dismissed.

[¶ 9.] When, in 2003, the South Dakota Department of Social Services, Office of Child Support Enforcement, began seeking past due child support on Dolly's behalf, William moved to vacate the 1991 judgment under SDCL 15–6–60(b)(4). At that time, his child support arrears were nearly $80,000. (They now exceed $100,000.) In his motion, dated April 11, 2003, William argued that the portion of the judgment pertaining to child support was void due to the lack of personal and subject matter jurisdiction. According to William, the circuit court "had no jurisdiction to impose any personal judgment upon [him] in that action on the ground and for the reason that at all relevant times [he] was an enrolled member of the Crow Creek Sioux Tribe residing upon the Crow Creek Reservation, Indian Country...."

[¶ 10.] In denying the motion to vacate, the circuit court ruled that the judgment is now res judicata and that, in any event, the exercise of jurisdiction was valid in 1991. On appeal, William argues that the circuit court should have vacated the 1991 judgment when there was no jurisdiction to impose child support on an Indian tribal member who resided within the bounds of the reservation.

### Analysis and Decision

[¶ 11.] Ordinarily, questions of jurisdiction can be raised at any time, even sua sponte by this Court. *Reaser v. Reaser,* 2004 SD 116, ¶ 27, 688 N.W.2d 429, 437 (citations omitted). A judgment rendered without jurisdiction is void. *Miller v. Weber,* 1996 SD 47, ¶ 13, 546 N.W.2d 865, 868 (citing *Crowley v. Trezona,* 408 N.W.2d 332, 333 (S.D.1987)). "A judgment which is void is subject to collateral attack both in the State in which it is rendered and in other States." Restatement (First) of Judgments § 11 (1942). The applicability of the doctrine of res judicata is a question of law examined de novo. *Banks v. International Union Electronic, Elec., Technical, Salaried and Mach. Workers,* 390 F.3d 1049, 1052 (8thCir.2004) (citation omitted).

[¶ 12.] William argues that the circuit court had no jurisdiction to impose child support in the 1991 divorce decree. The circuit court, he asserts, had "no general civil jurisdiction over Indians on reservations within its borders." Because he was domiciled on the reservation at all times, and because he did not conduct any activity within the State of South Dakota, he contends that jurisdiction was lacking and that the circuit court's refusal to vacate the 1991 child support judgment was error.

[¶ 13.] Under SDCL 15–6–60(b), "On motion and upon such terms as are just, the court may relieve a party or his legal

representative from a final judgment, order, or proceeding for the following reason[]: ... (4) The judgment is void...." *Id.* (1966). Our standard of review for motions under SDCL 15–6–60(b)(4) is plenary. *See Jopling v. Jopling,* 526 N.W.2d 712, 714–15 (S.D.1995) (citing *Kromer v. Sullivan,* 88 S.D. 567, 570, 225 N.W.2d 591, 592 (1975)). William argues that because the judgment is void, he has no responsibility to pay child support imposed on him in the 1991 judgment.

▇▇▇▇ [¶ 14.] A void judgment derives from, among other things, a court that had no personal or no subject matter jurisdiction. "If the circuit court lacks jurisdiction over a defendant's person, a judgment or order entered against such defendant is void." *Miller,* 1996 SD 47, ¶ 13, 546 N.W.2d at 868. " 'Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void.' " *City of Sioux Falls v. Missouri Basin Mun. Power Agency,* 2004 SD 14, ¶ 10, 675 N.W.2d 739, 742 (quoting *Barnes v. Matzner,* 2003 SD 42, ¶ 10, 661 N.W.2d 372, 375 (further citations omitted)). William contends that because the circuit court lacked personal and subject matter jurisdiction he may attack the 1991 judgment as void, even now, fourteen years later. We have often said that questions regarding jurisdiction may be raised at any time. *Reaser,* 2004 SD 116, ¶ 27, 688 N.W.2d at 437 (citation omitted).

▇▇▇▇ [¶ 15.] As straightforward as William's argument appears to be, we nonetheless confront a conflict of principles. On the one hand, a purportedly void judgment has traditionally been vulnerable to collateral challenge. On the other hand, the doctrine of res judicata prevents the relitigation of claims that were litigated in prior proceedings. *Merchants State Bank v. C.E. Light,* 458 N.W.2d 792, 794 (S.D.

1990) (citing *Bank of Hoven v. Rausch,* 449 N.W.2d 263, 266 (S.D.1989)). Although subject matter jurisdiction cannot be established by waiver, and although lack of either personal or subject matter jurisdiction can be raised in subsequent proceedings, under certain circumstances, courts have invoked the doctrine of res judicata to preclude reexamining asserted jurisdictional defects when the matter was finally adjudicated in an earlier proceeding. *In re S.L., A.C., D.C., R.A. & L.P.,* 872 S.W.2d 573, 576 (Mo.Ct.App.1994) (citing *State ex rel. Agri–Trans Corp. v. Nolan,* 756 S.W.2d 203, 205–06 (Mo.Ct.App.1988)). "The doctrine of res judicata protects 'parties from being subjected twice to the same cause of action, since public policy is best served when litigation has a finality.' " *Faulk v. Faulk,* 2002 SD 51, ¶ 16, 644 N.W.2d 632, 635 (quoting *Moe v. Moe,* 496 N.W.2d 593, 595 (S.D.1993)).

▇▇▇▇ [¶ 16.] Res judicata serves to bar further court action, including appeals, when (1) there was a final judgment on the merits in the earlier action, (2) the question decided in the former proceeding is the same as the one decided in the present action, (3) the parties to both actions are the same, and (4) "there was a full and fair opportunity to litigate the issues in the prior adjudication." *Moe,* 496 N.W.2d at 595 (citing *Raschke v. DeGraff,* 81 S.D. 291, 295, 134 N.W.2d 294, 296 (1965)). Of course, we have also held that a prior judgment is final if it is rendered by a court "having jurisdiction of the parties and subject matter[.]" *Raschke,* 81 S.D. at 296, 134 N.W.2d at 297 (following *Cundy v. Weber,* 68 S.D. 214, 300 N.W. 17, 20 (1941) (citation omitted)). "The principle of finality has its strongest justification where the parties have had full opportunity to litigate a controversy, especially if they have actually contested both the tribunal's jurisdiction and issues concerning the merits."

RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt a (1982).

 [¶ 17.] Several courts have concluded that when a party appears and contests jurisdiction, a judgment rendered on jurisdiction is final for the purposes of res judicata. As the United States Supreme Court recognized:

> Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.

*Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 525–26, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931); *see also Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940). After a jurisdictional ruling, "the determination is res judicata between the parties and can only be attacked directly by an appeal therefrom." *Claxton v. Simons,* 174 Ohio St. 333, 189 N.E.2d 62, 65 (1963) (citing *Baldwin,* 283 U.S. at 525–26, 51 S.Ct. at 518). Even though an earlier determination of jurisdiction may be erroneous on the facts and law, the doctrine of res judicata will still apply, precluding further litigation on the judgment. *Id.* (following *Baldwin,* 283 U.S. at 525–26, 51 S.Ct. at 518); *see Tuck-*

*er v. Tucker,* 35 Md.App. 710, 373 A.2d 16, 18–19 (1977).

[¶ 18.] William first sought relief through an intermediate appeal to this Court. Our prior decision addressed solely the issue whether the circuit court possessed personal jurisdiction over the parties and subject matter jurisdiction of the divorce action. *Wells,* 451 N.W.2d at 406. After jurisdiction was upheld, the case continued in circuit court. In its findings of fact, the circuit court found that the best interests of the children required that Dolly have custody; that Dolly's monthly net income was $650; that William's "monthly net income or earning ability [was] $1,500." In its conclusions of law, the court ruled that it had personal and subject matter jurisdiction over the "divorce action, the parties and the children of the parties" and that William was obligated to pay child support. Thereafter, William filed a notice of appeal. In his docketing statement, he recited his appeal issues, which included lack of personal jurisdiction and lack jurisdiction over the subject matter. When he failed to pursue his appeal, it was dismissed.

[¶ 19.] The rule that an earlier determination of subject matter jurisdiction [1] is conclusive in later litigation has found acceptance in the Restatement (Second) of Judgments § 12 (1982):

> § 12. Contesting Subject Matter Jurisdiction
>
> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter

---

1. An even stronger preclusion applies to collateral challenges to personal jurisdiction:

> Where a defendant appears in an action to object that the court has no jurisdiction over him and the court overrules the objection and judgment is rendered against him, the parties are precluded from collaterally attacking the judgment on the ground that the court had no jurisdiction over the defendant.

RESTATEMENT (FIRST) OF JUDGMENTS § 9 (1942).

jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Id.*[2]

[¶ 20.] Here, the three Restatement policy considerations favor upholding the 1991 judgment as res judicata. First, the subject matter of this action was not so plainly beyond the circuit court's jurisdiction that its hearing the matter was a manifest abuse of authority. Second, allowing the judgment to stand here would not substantially infringe on "the authority of another tribunal or agency of government," and more particularly in this case, it would not infringe on tribal sovereignty. Although the policy against contravening tribal sovereignty is strong, this child support judgment does not "infringe[] on the right of reservation Indians to make their own laws and to be ruled by them." *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). Tribal law and tribal self-governance are not in issue. What is in issue is the support of six children living off the reservation in state jurisdiction. Dolly's divorce action did not commence on the reservation. She left the reservation and then sought support for her children. The purpose of the *Williams* infringement test is to "resolve [the] conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected." *McClanahan v. State Tax Comm'n of Arizona,* 411 U.S. 164, 179, 93 S.Ct. 1257, 1266, 36 L.Ed.2d 129 (1973). Undoubtedly, the state has a compelling interest in making sure that children in the state are supported by their parents.

[¶ 21.] Third, the judgment here was rendered by a general jurisdiction court fully capable of making an adequate determination on the question of its own jurisdiction. In terms of procedural fairness, William had a full opportunity to litigate the question of subject matter jurisdiction. Under the old doctrine, a judgment from a court purportedly lacking subject matter jurisdiction was forever subject to being declared void. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt b (1982). Under the modern rule, however, "conclusiveness of determinations of subject matter jurisdiction gives finality substantially greater weight" than purported invalidity. RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt a.

[¶ 22.] A Missouri court faced the same problem we face here: if we do not recognize the modern rule, an unsuccessful litigant could file a motion challenging jurisdiction, "then fail to appeal the denial of [the] motion, and then continue to file new motions *seriatim* attacking jurisdiction." *S.L.,* 872 S.W.2d at 576. As that court recognized, "[a]ny other rule would mean there is no finality to any judgment in

---

2. "When the question of the tribunal's jurisdiction is raised in the original action, in a modern procedural regime there is no reason why the determination of the issue should not thereafter be conclusive under the usual rules of issue preclusion." RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt c (1982).

which subject matter jurisdiction may be questioned." *Id.* At some point, there must be an end to jurisdictional challenges. William had a full and fair opportunity to contest jurisdiction. The question was raised, litigated, and determined, and thereafter he abandoned his appeal on the issue. The child support judgment is res judicata.

[¶ 23.] Affirmed.

[¶ 24.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶ 25.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 26.] I dissent. In *Wells v. Wells,* 451 N.W.2d 402 (S.D.1990), we held that the circuit court had valid jurisdiction to declare a *decree of divorce* between the wife and husband, and no more. At that time (1990), the law clearly provided that tribal courts, not circuit courts, had exclusive subject matter jurisdiction over two Native American Indians domiciled on Indian land. Therefore, the circuit court could determine that the marriage was terminated but could not determine custody, child support or property rights on Indian land.

[¶ 27.] The majority opinion is inconsistent when it says at ¶ 20 that "Dolly's divorce action did not commence on the reservation" and at ¶ 2 "[i]n April 1987, no longer able to endure William's domestic abuse, Dolly fled the reservation with their five children." How could the divorce action arise and be commenced in Rapid City when there is no showing William was ever there?

[¶ 28.] What should Dolly have done in 1990? Simple. Commence an action against William in tribal court for custody, child support and division of property. That is the only place where there was

subject matter jurisdiction and the only place those judgments can be enforced.

[¶ 29.] As stated in my dissent in *Weston v. Jones:*

This divorce was entered on June 10, 1996, a day and age where the law clearly provided that tribal courts have *exclusive* **subject matter jurisdiction** over two Native American Indians domiciled on Indian land.

For years, the law was that:

**Subject matter jurisdiction** can not be conferred by consent.

**Subject matter jurisdiction** can not be conferred by agreement.

**Subject matter jurisdiction** can not be conferred by stipulation.

**Subject matter jurisdiction** can not be conferred by waiver.

In fact, because jurisdiction can not be waived:

The lack of jurisdiction can be raised at any time. By anybody, any time, any place.

In fact, as recently as May 26, 1999, this court claimed that jurisdiction must be raised *sua sponte.*[FN6]

FN6. *Decker v. Tschetter Hutterian Brethren,* 1999 SD 62, ¶ 14, 594 N.W.2d 357, 362 (plurality opinion by Gilbertson, J., joined by Miller, C.J., and Konenkamp, J., stating "this court is required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not . . . .") (quoting *State v. Phipps,* 406 N.W.2d 146, 148 (S.D.1987) (citations omitted)).

But, not anymore, because now we have jurisdiction by estoppel.

1999 SD 160, ¶¶ 32–35, 603 N.W.2d 706, 713.

[¶ 30.] AND NOW, we have jurisdiction by *res judicata.*

[¶ 31.] Contrary to the majority opinion at ¶ 20, it is clear that THIS ACTION DOES INFRINGE on tribal sovereignty. *See Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (holding that allowing a state court to exercise jurisdiction over a civil suit against an Indian where the cause of action arises on an Indian reservation "would undermine the authority of tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves"). What is more important to the rights of reservation Indians than to make, determine and enforce their own laws concerning custody, child support or property rights on tribal land? This case and *Weston* go a long way to making tribal domestic law irrelevant.

[¶ 32.] For all these reasons, I dissent.