2002 SD 51

**Lori A. FAULK, Plaintiff
and Appellant,**

v.

**Scott FAULK, Defendant and Appellee.**

**No. 21927.**

Supreme Court of South Dakota.

Considered on Briefs on March 25, 2002.

Decided May 1, 2002.

Scott Armstrong, Rapid City, South Dakota, Attorney for plaintiff and appellant.

Robert M. Nash of Wilson, Olson, Nash & Becker, Rapid City, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice.

[¶ 1.] Lori Faulk appeals from a judgment precluding her from seeking any child support arrearages from her ex-husband, Scott Faulk, for the years of 1982–1994. Lori appeals, arguing that she is not barred from seeking child support arrearages, especially for the years of 1990–1994. We reverse and remand for a determination of child support arrearages with interest, less payments and credits.

## FACTS

[¶ 2.] Lori and Scott Faulk were divorced on August 17, 1982. Lori was given custody of the parties' two minor children, Milissa and Michael. Child support was set at $100 per month, per child. The order provided that all child support payments were to be paid to the Pennington County Clerk of Court's Office in Rapid City, South Dakota. This order was never changed, but the amount was modified to $150 per month, per child. Following the divorce, Scott moved to Wyoming and, in 1984, to Alaska. Shortly after the divorce, Scott became delinquent in his child support payments. As of 1986, child support records indicated that Scott was delinquent in his support obligation in the principal amount of $6,925.

[¶ 3.] In 1982, Lori applied for and received Aid to Dependent Children (ADC) from the state of South Dakota. She received ADC for a period of time in 1982 and then again from February 23, 1984 through August 28, 1990. Under SDCL 28–7–6.3, Lori assigned all of her support rights to the state for the periods during which she received ADC.*

[¶ 4.] On November 10, 1994, Scott moved to modify custody and visitation with respect to the two minor children. Lori agreed to the change in custody and on January 13, 1995, the trial court entered an order changing custody. Lori further agreed to pay support in the amount of $386 per month for both children, but she later became delinquent in her support obligation.

[¶ 5.] Lori obtained an administrative judgment on November 21, 1994, for child support arrearages in the amount of $15,966; $6,925 as principal and $9,041 as interest from January 1984 to December 1988. Scott contested the validity of this judgment and filed an appeal with this Court. This Court dismissed the appeal because it was an appeal from an administrative judgment that had not been signed by a circuit judge. The case was remanded to the circuit court. The amount of this obligation should have been determined and reduced to judgment.

[¶ 6.] On April 16, 1996, Scott moved to set aside the November 21, 1994 award. An evidentiary hearing concerning Scott's child support payment history, specifically for the period from January 1984 to December 1988, was held on June 10, 1996. On September 17, 1996, the trial court entered an order setting aside the administrative judgment. In its findings of fact and conclusions of law, the trial court defined the ultimate issue as whether Lori had a "right to seek a judgment [for] any alleged arrearages in child support during the time that she was on Aid to Dependent Children and received that funding from

---

* SDCL Chapter 28–7, Aid to Dependent Children, was repealed in 1997. It was replaced by Chapter 28–7A and titled Temporary Assistance for Needy Families. SDCL 28–7–6.3, which governed the assignment of support rights at the time of this action, was replaced by SDCL 28–7A–7.

the State of South Dakota." The court determined that Lori had "waived all right, title and interest that she might have in pursuing [Scott] for any of those alleged arrearages."

[¶ 7.] On December 7, 2000, Lori filed a motion for order to show cause, alleging that Scott owed $39,300 in delinquent child support for the years of October 1983 to October 1994. This amount excluded the time during which Lori was receiving ADC payments from the state. An order to show cause was filed and Scott opposed the motion. He admitted that he had paid Lori child support for only one child from 1990–1994, but did so because one or more of the children were living with him during this time.

[¶ 8.] On January 16, 2001, a hearing was held and the trial court judge denied Lori's claim for support arrearages prior to 1995 based on the doctrines of laches and res judicata. The trial court determined that "the matter of [Scott's] arrearages to [Lori] was previously considered by this court and resolved on September 17, 1996 by the [c]ourt's Findings of Fact, Conclusions of Law and Order Setting Aside Judgment." The trial court concluded that no child support arrearages were due from Scott to Lori. On March 1, 2001, the trial court entered an order dissolving the order to show cause and reinstated garnishment proceedings to satisfy Lori's delinquent support obligation. Lori appeals, seeking delinquent support from Scott for the period of August 28, 1990, when she stopped receiving ADC, to November 10, 1994, when the agreed change of custody was filed.

## STANDARD OF REVIEW

[¶ 9.] All of the evidence presented in this case was received through documentary evidence and deposition testimony. This Court formerly reviewed depositions and documentary evidence under the de novo standard. However,

SDCL 15–6–52(a), recently amended, provides that "[f]indings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous[.]" Under this standard, "[c]lear error exists only when, upon a review of all the evidence in the record, we are left with a definite and firm conviction a mistake has been made."

*Estate of Catron*, 2001 SD 57, ¶ 11, 627 N.W.2d 175, 177 (citing *Even v. City of Parker*, 1999 SD 72, ¶ 9, 597 N.W.2d 670, 674).

[¶ 10.] **1. WHETHER THE TRIAL COURT ERRED IN RETROACTIVELY MODIFYING SCOTT'S SUPPORT OBLIGATION FOR THE PERIOD OF AUGUST 1990 TO NOVEMBER 1994.**

[¶ 11.] In its September 17, 1996 and March 1, 2001 rulings, the trial court retroactively modified child support arrearages owed by Scott to Lori. Both judgments determined that "no money was due and owing from [Scott] to [Lori]." Scott argues that the trial court was correct in this determination. He claims he was not obligated to pay full child support during the years of 1990–1994 because one or more of the children were living with him. Both children spent extended periods of time with Scott beginning in 1990. Milissa began living full-time with Scott in June 1992 and Michael began living with him in June 1994. During these times, Scott did not pay child support in full.

[¶ 12.] It is well established that: "Any unpaid support bec[omes] an unpaid judgment against [the payor spouse] as a matter of law, not subject to retroactive modification." *Agee v. Agee*, 1996 SD 85, ¶ 20, 551 N.W.2d 804, 806 (citing *Houser v. Houser*, 535 N.W.2d 882, 885 (S.D.1995)

(citing SDCL 25–7–7.3; SDCL 25–7–7.4)). Only those past-due child support payments which accrue during the time of a pending modification petition may be modified. *See* SDCL 25–7–7.3. *See also O'Grady v. O'Grady,* 1998 SD 89, ¶ 11, 582 N.W.2d 707, 709 (stating SDCL 25–7–7.3 prohibits retroactive modification of child support); *Kier v. Kier,* 454 N.W.2d 544, 546 (S.D.1990) (holding that the only payments subject to modification are those that accrue during the time a petition for modification is pending); *Olson v. Olson,* 438 N.W.2d 544, 548 (S.D.1989) (holding trial court erred in *sua sponte* retroactively modifying support obligation where no petition for modification had been filed by the parties).

[¶ 13.] Scott had past-due child support obligations. He had a duty to pay child support monthly. The fact that one or more of his children were living with him during the years of 1990–1994 does not excuse his obligation to pay support. Scott should have moved the trial court for modification or abatement of his child support obligation. However, at no time prior to November 10, 1994, did he move to modify his obligation. Accordingly, the trial court cannot retroactively modify Scott's obligation and it erred in its determination that Scott did not owe any child support to Lori for the years prior to 1995.

[¶ 14.] **2. WHETHER LORI'S CLAIM FOR CHILD SUPPORT ARREARAGES IS BARRED BY THE DOCTRINE OF RES JUDICATA.**

■ [¶ 15.] Scott argues that Lori's claim for child support arrearages for the years of 1990–1994 is barred by the doctrine of res judicata. Scott asserts that Lori had the opportunity to litigate any and all claims for delinquent support against him during the June 1996 eviden-

tiary hearing regarding his child support payment history. He claims that Lori cannot now attempt to relitigate the 1996 decision which he considers to be a final decision on the merits.

■ [¶ 16.] "Res judicata embodies a concept of merger and bar and is therefore broader than issue preclusion or collateral estoppel." *Moe v. Moe,* 496 N.W.2d 593, 595 (S.D.1993) (citing *Black Hills Jewelry Mfg. Co. v. Felco Jewel Ind., Inc.,* 336 N.W.2d 153 (S.D.1983)). The doctrine of res judicata protects "parties from being subjected twice to the same cause of action, since public policy is best served when litigation has a finality." *Id.* If rendered by a court of competent jurisdiction, a final prior judgment "is conclusive as to all rights, questions, or facts directly involved and actually, or by necessary implication, determined therein[.]" *Moe,* 496 N.W.2d at 595 (citing *Raschke v. DeGraff,* 81 S.D. 291, 295–96, 134 N.W.2d 294, 297 (1965)).

■ [¶ 17.] This Court applies four factors to determine whether the doctrine of res judicata bars a cause of action: "(1) whether the issue decided in the former adjudication is identical with the present issue; (2) whether there was a final judgment on the merits; (3) whether the parties are identical; and (4) whether there was a full and fair opportunity to litigate the issues in the prior adjudication." *Id.* at 595 (citing *Raschke,* 81 S.D. 291 at 295, 134 N.W.2d at 296).

[¶ 18.] Lori's claim for child support arrearages for the years of 1990–1994 was not an issue during the June 1996 hearing. Additionally, there was no final decision rendered on the merits of her current claim. In its findings of fact and conclusions of law, the trial court stated that the time period at issue during the June 1996 evidentiary hearing was June 1984 to December 1988. While it set aside the 1994

administrative judgment awarding Lori arrearages for the period of 1982–1994, the ruling did not specifically address whether any arrearages were owing for the years after 1988. Furthermore, because the years of 1990–1994 were not at issue during the June 1996 hearing, Lori was not afforded a full and fair opportunity to litigate her claim for that period.

[¶ 19.] Lori instituted this action to collect child support arrearages. She is not attempting to relitigate the issue. There simply is no final judgment on the merits with respect to the years of 1990–1994. Scott failed to fulfill his support obligation during these years and Lori is only attempting to enforce the obligation already in place. Because Scott has failed to prove all the necessary elements, the doctrine of res judicata does not apply.

[¶ 20.] **3. WHETHER LORI'S CLAIM FOR CHILD SUPPORT ARREARAGES IS BARRED BY THE DOCTRINE OF LACHES.**

[¶ 21.] Scott argues that the trial court was correct in stating that Lori's claim was barred by the doctrine of laches. He asserts that Lori displayed a want of due diligence in failing to bring all of her claims for arrearages at the June 1996 hearing and then waiting four years before making a claim for arrearages for the years of 1990–1994. Scott contends Lori's unreasonable delay resulted in prejudice to him.

[¶ 22.] To prove laches, Scott must show that: "(1) [Lori] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable delay before commencing the suit, and (3) that allowing her to maintain the action would prejudice [Scott]." *Conway v. Conway*, 487 N.W.2d 21, 24 (S.D.1992) (emphasis omitted). This is an action on a divorce

judgment which may be commenced "within twenty years after the cause of action shall have accrued[.]" SDCL 15–2–6(1). Furthermore, SDCL 25–7–7.4 provides:

> Any payment or installment of support under an order for support, as defined by § 25–7A–1, whether entered by a court or an administrative entity of this state or of any other state or jurisdiction, which is unpaid after the date it is due, is a judgment by operation of law, with the full force, effect and attributes of a judgment of this state, including enforceability, and is entitled, as a judgment, to full faith and credit in this state.

"Logically, enforcing a valid judgment would rarely invoke the application of laches, especially in a case where the judgment requires periodic payments." *Culhane v. Michels*, 2000 SD 101, ¶ 15, 615 N.W.2d 580, 586.

[¶ 23.] Scott failed to show that Lori unreasonably delayed bringing her action for child support arrearages. *See Bonde v. Boland*, 2001 SD 98, ¶ 19, 631 N.W.2d 924, 927 (holding that five-year delay in seeking child support arrearages was not unreasonable). *But cf. In re Loomis*, 1998 SD 113, ¶ 15, 587 N.W.2d 427, 430 (holding that a fourteen-year delay in seeking support payments was unreasonable under the circumstances).

[¶ 24.] Furthermore, allowing Lori to maintain her claim against Scott for child support arrearages would not prejudice him. Scott claims that he satisfied his support obligation and as proof of this, provided the trial court with check carbons made out to Lori. Lori stated she never received any of these payments. Scott contends that if Lori had brought this action earlier, he would have been able to conclusively establish his payment record

by obtaining actual cancelled checks from his bank.

[¶ 25.] Scott, however, did not make his child support payments through the Pennington County Clerk of Courts as required by the divorce decree. Rather, he made sporadic payments directly to Lori. As a result, there is no exact record of the amount of support he paid. Scott did not seek to have his informal modification of the divorce decree approved by the court. *See Houser v. Houser,* 535 N.W.2d 882, 884–85 (S.D.1995) (holding father failed to make his payments to the Brookings County Clerk of Courts and his act of paying the mother directly could not modify or forgive his child support arrearages without court approval). He did not have the authority to modify the divorce decree without court approval and cannot now claim his failure to follow the proper payment procedure prejudiced him.

[¶ 26.] Because Scott failed to establish two of the three factors required, Lori's claim for child support arrearages from 1990–1994 is not barred by the doctrine of laches.

[¶ 27.] **4. WHETHER SCOTT OWES SUPPORT, AND IF SO, THE AMOUNT THEREOF, AND WHETHER INTEREST SHOULD BE ASSESSED.**

[¶ 28.] We first remind the trial court and parties that all payments should have been made to the Pennington County Clerk of Courts as provided by the divorce decree. SDCL 25-4-43 provides, in part:

When a divorce is granted or a decree for separate maintenance entered or thereafter, and when the court has provided for the maintenance of the children of the marriage, *all payments so required by the order of the court may by order of the court be paid to the clerk of courts* in the amount and at the time specified in said order[.]

(emphasis added). Scott did not comply with this directive. As a result, there is no reliable record of child support. "These divorced parents are not empowered to change a judge's order." *Taylor v. Ellenbecker,* 471 N.W.2d 587, 590 (S.D.1991) (Henderson, J., concurring) (stating father should have made support payments to clerk of courts as authorized under the divorce decree) (citing *State, Fall River County v. Dryden,* 409 N.W.2d 648 (S.D. 1987)). As reflected by the facts, Scott did not regularly pay child support nor did he pay it to the Pennington County Clerk of Courts when he did pay.

[¶ 29.] As already established in the analysis contained in Issues 1 through 3, Scott owes Lori delinquent support. Therefore, we remand to the trial court for a determination of child support arrearages. With respect to Scott's child support obligation, we instruct the trial court to determine: (1) the appropriate time period for which Lori should receive child support arrearages; (2) the amount owed during that period; (3) what payments and credits should be subtracted from the amount owed; and (4) what monthly interest should be assessed. We further instruct the trial court to determine the amount of Lori's support obligation, less payments and credits, plus monthly interest, and subtract that amount from amounts owed by Scott.

[¶ 30.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 31.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.