2003 SD 24

**Daniel C. RINDAL and Raymond J. Shape, Plaintiffs and Appellees,**

v.

**Gail SOHLER and Janet Sohler, Defendants and Appellants.**

**Nos. 22246, 22258.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 2000.

Decided March 5, 2003.

Frank B. Morrison, Jr. of Morrison Law Offices Whitefish, Montana, William F. Day, Jr. of Lynn, Jackson, Shultz & LeBrun, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellees.

Steven M. Johnson and Ronald A. Parsons, Jr. of Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, South Dakota, Attorneys for defendants and appellants.

GORS, Circuit Judge.

[¶ 1.] Daniel C. Rindal (Rindal) and Raymond J. Shape (Shape) sued Gail Sohler and Janet Sohler (Sohlers) for failure to carry out the provisions of an agreement for cancellation of contracts for deed. The trial court entered an order for equitable adjustment. Sohlers appealed. Rindal and Shape filed a notice of review. We reverse.

## FACTS

[¶ 2.] Rindal and Shape bought a 2,700 acre ranch from Sohlers in 1987 for $840,000 on two contracts for deed. Rindal and Shape were feeding up to 20,000 to 30,000 head of cattle for the Louis Dreyfus Company. The Dreyfus deal soured over the disappearance of about 4,000 head of cattle. Rindal and Shape were indicted in Yankton County in November 1991. *State v. Shape*, 517 N.W.2d 650 (S.D.1994). The charges were eventually dismissed.

[¶ 3.] In 1989, Rindal and Shape quit paying on the contracts for deed after they had paid $180,000 principal and $219,450 interest for a total of $339,450. Shape subsequently filed a Chapter 12 bankruptcy. Sohlers obtained relief from the automatic stay on August 27, 1991. On October 16, 1991, an agreement for cancellation of contracts for deed was signed. Rindal and Shape agreed to deed back the ranch and Sohlers agreed to make immediate efforts to resell the ranch. If the ranch was resold, Sohlers would pay Rindal and Shape any excess over Sohlers' expenses.[1] Rindal and Shape quitclaimed the ranch back to Sohlers. Sohlers took various steps to resell the ranch.[2] Shape did not leave. In November 1992, Sohlers obtained a court order to evict Shape who left the property in such deplorable condition that it took years and thousands of dollars to return it to serviceable condition. For example, the pasture land was overgrazed, the property was infested with weeds, dead cattle were left all over the property, holes were cut in buildings and

---

1. The expenses included the amount needed to pay off the contracts for deed between Rindal and Shape and the Sohlers, to pay off the mortgage Shape had placed on the land, to pay off any other liens, to pay real estate taxes and to pay the Sohlers' legal fees.

2. Sohler contacted neighbors and customers and distributed brochures at his livestock auction business in Yankton. Sohler showed the property to prospective purchasers, adjoining property owners and two local Hutterite colonies. Negotiations with the Weborgs (neigh-

bors) and Lavern Koupal (who later rented the land) fell through when they saw the devastated condition of the property. Shape's mortgage of the land to a Nebraska Bank also made sale of the land difficult. Sohler even tried to sell the ranch to the Nebraska banker and bank that held Shape's mortgage. Finally, Sohlers listed the ranch with Century 21 Real Estate agent Harvey Youngberg, who specialized in commercial and agricultural property.

the water was left running which flooded a large area.

[¶ 4.] After the deed-back, Sohlers restored the property and land values increased over the years. In May 1997, Rindal and Shape sued the Sohlers to get the ranch back claiming the Sohlers had breached the agreement for cancellation of contracts for deed by not reselling the ranch and giving them the excess money referred to in the agreement.

[¶ 5.] The trial court held a trial with an advisory jury. When the jury found that Sohlers had not breached the agreement for cancellation of contracts for deed, the trial court rejected the advisory verdict and found that the Sohlers had breached the agreement. The trial court then concluded that an equitable adjustment under *Beitelspacher v. Winther*, 447 N.W.2d 347 (S.D.1989), and former SDCL 21–50–2, repealed 1992 SessL ch 157, was the appropriate remedy. Sohlers appealed and Rindal and Shape filed a notice of review.

## STANDARD OF REVIEW

[¶ 6.] The trial court's findings of fact are reviewed under the clearly erroneous standard. *Estate of Fountain v. Schroeder*, 2001 SD 139, ¶ 6, 637 N.W.2d 27, 28. "The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed." *Id.* Questions of law are reviewed de novo. *Bergee v. Bd. of Pardons and Paroles*, 2000 SD 35, ¶ 4, 608 N.W.2d 636, 638. This Court will only overturn a trial court's conclusions of law when the trial court erred as a matter of law. *Estate of Fountain*, 2001 SD 139, at ¶ 6, 637 N.W.2d at 28. When there is a mixed question of fact and law, the court will review the issue de novo. *Id.*

## DECISION

### A. Res Judicata and Claim Preclusion.

[¶ 7.] In 1992, after signing the cancellation of contracts for deed and quitclaim deeds returning the property to Sohlers, Shape refused to vacate the premises. Sohlers then filed an action for forcible entry and detainer to evict Shape. Sohlers argued that the 1992 judgment evicting Shape precluded the present lawsuit under the doctrine of res judicata. The trial court held that the only issue addressed in 1992 was possession and that the alleged breach of contract was not raised and was not precluded.

[¶ 8.] Res judicata precludes relitigation of issues that were litigated between the same parties in a prior action. *Faulk v. Faulk*, 2002 SD 51, ¶ 16, 644 N.W.2d 632, 635. Shape did not raise a claim for breach of contract in the forcible entry and detainer action even though the Sohlers had already failed to resell the property by the time the action for forcible entry and detainer was commenced (which was obvious since Sohlers were evicting Shape). Claim preclusion forecloses litigation of matters that could have been asserted in a prior action. *Lee v. Rapid City Area School Dist.*, 526 N.W.2d 738, 740 (S.D.1995).

[¶ 9.] To determine whether Shape could have asserted the claimed breach of contract in the forcible entry and detainer action, we turn first to SDCL 21–16–4, which provides:

An action under the provisions of this chapter cannot be brought in connection with any other except for rents and profits or damages but the plaintiff may bring separate actions for the same if he so desire.

Construing this provision, this Court has sometimes allowed additional equitable claims in actions for forcible entry and detainer. *LPN Trust v. Farrar Outdoor Advertising,* 1996 SD 97, ¶ 10, 552 N.W.2d 796, 798–99. However, this Court has also held that a vendor could not combine strict forfeiture of a contract for deed in an action for forcible entry and detainer. *BankWest, N.A. v. Groseclose,* 535 N.W.2d 860, 863–64 (S.D.1995). Forcible entry and detainer is a summary remedy for speedy possession of real estate. *LPN Trust,* 1996 SD 97 at ¶ 10, 552 N.W.2d at 798. However, courts should also hear other relevant matters to avoid a multiplicity of suits. *Id.*

[¶ 10.] It does not matter whether Shape could have raised Sohlers' claimed failure to make adequate efforts to resell the property. Rindal was not a party to the forcible entry and detainer action. Therefore, Rindal is not foreclosed by res judicata or claim preclusion from litigating the claim that Sohlers breached the agreement for cancellation of contracts for deed. The issue of equitable adjustment under *Beitelspacher* is the same whether the plaintiffs are Rindal and Shape or only Rindal.

### B. Breach of contract.

[¶ 11.] Rindal and Shape and the Sohlers entered into an agreement for cancellation of contracts for deed. The agreement called for cancellation of the contracts for deed and for Rindal and Shape to quitclaim the property back to the Sohlers. Sohlers agreed to make immediate efforts to resell the ranch. If the ranch was resold, Sohlers would pay Rindal and Shape any excess over Sohlers' expenses. Rindal and Shape claimed Sohlers failed to make the immediate efforts to sell the ranch required under the contract. Sohlers claimed they made immediate and extensive efforts to resell the ranch. The

facts were in dispute and the evidence was conflicting. Rindal and Shape's suit is based on an alleged breach of the agreement for cancellation of contracts for deed. They asked for specific performance, reconveyance of the property, an order canceling the quitclaim deeds and for money damages. On the day of trial, in an apparent effort to avoid a jury trial, Rindal and Shape disclaimed their request for money damages for breach of contract and indicated they were proceeding only for equitable relief.

[¶ 12.] An essential element to equitable relief is the lack of an adequate remedy at law. *Knodel v. Kassel Tp.,* 1998 SD 73, ¶ 8, 581 N.W.2d 504, 507; *Bienert v. Yankton School Dist.,* 63–3, 507 N.W.2d 88, 90 (S.D.1993); *Gross v. Conn. Mut. Life Ins. Co.,* 361 N.W.2d 259, 265 (S.D. 1985); *Hein v. Marts,* 295 N.W.2d 167, 171 (S.D.1980); *Anderson v. Kennedy,* 264 N.W.2d 714, 717 (S.D.1978). Rindal and Shape cannot disclaim their remedy at law and elect to sue in equity to avoid a jury trial. *Haberer v. Rice,* 476 N.W.2d 276, 277 (S.D.1991).

[¶ 13.] Rindal and Shape's suit is not a proper suit for equity. Rindal and Shape have a plain, adequate and speedy remedy at law for money damages for breach of contract. *Dairy Queen v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44, 48 (1962); *First W. Bank, Sturgis v. Livestock Yards Co.,* 466 N.W.2d 853, 856–57 (S.D.1991). Breach of contract presents a pure question of fact, *Moe v. John Deere Co.,* 516 N.W.2d 332, 335 (S.D.1994), for a jury, *C & W Enterprises v. City of Sioux Falls,* 2001 SD 132, ¶ 19, 635 N.W.2d 752, 758; *Harms v. Northland Ford Dealers,* 1999 SD 143, ¶ 21, 602 N.W.2d 58, 63; *Swiden Appliance v. Nat. Bank of S.D.,* 357 N.W.2d 271, 277 (S.D.1984). A suit for money damages

also preserves the Sohlers' right to a jury trial.

[¶ 14.] The court recognized that the present action was really only for money damages during the hearing held before the trial commenced:

> The only question is monetary damages that they're going to get if there was a breach of the contract and how that's accomplished....

The court's comment was correct. The equitable adjustment ordered by the court will only result in a money judgment for breach of contract. The circuit court turned a breach of contract case into an equitable adjustment case and denied the Sohlers a jury trial to which they were not only entitled but which they also subsequently won.

[¶ 15.] Even though the advisory jury found that the Sohlers did not breach the agreement for cancellation of contracts for deed, the court found that the Sohlers did not make the required effort to sell the ranch. Equitable adjustment would not have been a remedy for breach of contract then and should not be a remedy now. The equitable adjustment ordered by the court arose under former SDCL 21–50–2, repealed 1992 SessL ch 157, which provided for equitable adjustment in an action to foreclose a contract for deed. SDCL 21–50–2 provided in part:

> The court in such actions shall have the power to equitably adjust the rights of all the parties [to the contract for deed]....

Equitable adjustment was combined with strict foreclosure to ameliorate the harsh effects of forfeiture and to prevent unjust enrichment. *Beitelspacher*, 447 N.W.2d at 351. Sohlers never brought an action to foreclose the contracts for deed and this action by Rindal and Shape is for breach of contract.

[¶ 16.] Since there was no action for foreclosure of the contracts for deed, there was no foreclosure. Therefore, Rindal and Shape were never entitled to equitable adjustment. Rindal and Shape gave up their right to an equitable adjustment when they entered into the agreement for cancellation of contracts for deed. The cancellation of contracts for deed (a separate document from the agreement for cancellation of contracts for deed) specifically provided:

> The undersigned [Rindal and Shape] further acknowledge that this instrument shall constitute a total disclaimer of any right, title or interest in the aforementioned real estate ....

The quitclaim deeds further waived any rights under the cancelled contracts for deed. SDCL 43–25–8.

[¶ 17.] The trial court erred as a matter of law by ordering equitable adjustment when there was a plain, speedy and adequate remedy at law for money damages for breach of contract. Furthermore, equitable adjustment ceased to exist as a remedy on July 1, 1992, when the legislature's repeal of former SDCL 21–50–2 took effect. Therefore, equitable adjustment had no application to this action commenced in 1997. Rindal and Shape had no right to a remedy that no longer existed.

## NOTICE OF REVIEW

[¶ 18.] Rindal and Shape filed a notice of review claiming that Sohler's attorney fees should not be considered when the court made an equitable adjustment. Since an equitable adjustment is not proper, we will not address Rindal and Shape's notice of review.

## CONCLUSION

[¶ 19.] The trial court's order rejecting the jury's advisory verdict and for equitable adjustment is reversed. This

Court has authority to reinstate an advisory verdict. *Nizielski v. Tvinnereim*, 453 N.W.2d 831, 834 (S.D.1990). Both sides fully tried the breach of contract issue to the jury. Since the jury has already found that the Sohlers did not breach the agreement for cancellation of contracts for deed, there is no need to retry this case. On remand, the trial court is directed to reinstate the jury verdict and to enter judgment in favor of Sohlers and against Rindal and Shape.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, and AMUNDSON, Retired Justice, concur.

[¶ 21.] ZINTER, Justice, concurs in part and dissents in part.

[¶ 22.] GORS, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 23.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

ZINTER, Justice, (concurring in part and dissenting in part).

[¶ 24.] I concur with all of the Court's opinion except for its reinstatement of the advisory jury's verdict. The Court relies upon *Nizielski v. Tvinnereim*, 453 N.W.2d 831 (S.D.1990) for authority to reinstate an advisory jury's verdict. In my judgment, neither *Nizielski* nor SDCL 15–6–39 (RCP 39) warrant reinstatement of an advisory jury verdict under the facts of this case.

[¶ 25.] Although *Nizielski* reinstated a jury verdict, it actually supports the conclusion that reinstatement of this advisory verdict is not warranted. In *Nizielski*, this Court held that fundamental fairness required reinstatement of a binding jury verdict that had been set aside after trial. However, the Court's holding was expressly premised on the facts that (1) those parties had consented to trial by jury, (2) the parties reasonably expected the jury's verdict to be binding, and (3) the trial court did not treat the jury's verdict as advisory until *after* the jury had returned its verdict. *Nizielski* noted that the timing of a trial court's notification to treat the jury's verdict as advisory is the *critical issue* in determining whether to reinstate a jury verdict. *Nizielski*, 453 N.W.2d at 834. Significant to this appeal, *Nizielski* stated that notification was required "to ensure fair notice to the litigants of the arena in which they find themselves in; and, further so that they can knowledgeably proceed with a mental determination as to how they can effectively conduct voir dire examination having a basic viewpoint of the role of the jury in the proceeding." *Id.* That pre-trial notice of the type of jury to be used in the trial, a prerequisite for reinstatement, is absent in this case. Because these parties were given notice that jury verdict would be advisory, we should not, on appellate review, now change the nature of the verdict without the opportunity of the parties to retry their case.

[¶ 26.] The federal courts apply this reasoning under Fed.R.Civ.P. 39, the counterpart to our advisory jury statute, SDCL 15–6–39. In *Pradier v. Elespuru*, 641 F.2d 808 (9th Cir.1981), the Court of Appeals considered a remarkably similar case. In that case, a defendant had demanded a jury trial. However, like the case before us, the trial court impaneled an advisory jury, and the plaintiff acquiesced in that trial to an advisory jury. After trial, the trial court overturned the advisory verdict, and the defendant appealed. The Court of Appeals concluded that even though the trial court erred in denying the defendant a jury trial as a matter of right, the advisory verdict, which favored the successful defendant/appellant, could not be reinstated. The Court of

Appeals held that the case had to be remanded for retrial before a non-advisory jury. It did so even though the advisory verdict was the verdict the successful defendant/appellant sought, and even though the plaintiff/appellee had acquiesced to the advisory jury. It reasoned:

> The advisory jury verdict may not be substituted. The entire trial took place with the understanding that the jury's verdict would be advisory only. There are frequently significant tactical differences in presenting a case to a court, as opposed to a jury. The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury.

*Pradier*, 641 F.2d at 811 (further citations omitted). *See also* 33 FedProc, LEd § 77:151 (stating, "[w]here a court improperly substitutes an advisory jury for a jury trial and an entire trial takes place with the understanding that the jury's verdict would be advisory only, the entire case must be remanded for a retrial before a regular jury.")

[¶ 27.] This rule and its underlying reasoning apply in the case we are considering. At the outset, it is conceded that Sohler's liability for breach of contract is the same issue to be determined in both trials. However, Rindal's and Shape's strategy, including the evidence and theories they will present, will very likely differ in an action for damages for breach of contract than in their ostensible claim for the "equitable relief" that they submitted to the advisory jury. This is evident from their arguments to Judge Rusch on the first morning of the advisory jury trial. At that critical time, Rindal and Shape adamantly indicated that they were not prepared to try a breach of contract case seeking damages. They then proceeded to try their case to the advisory jury as a matter of equity. We should not, therefore, reinstate the advisory jury verdict. We should remand this legal claim for breach of contract damages to a non-advisory jury.