2003 SD 42

**Cynthia A. BARNES, Plaintiff and Appellant,**

v.

**Dennis E. MATZNER, Defendant and Appellee.**

**No. 22387.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2003.

Decided April 16, 2003.

Stephanie R. Amiotte of Moore, Rasmussen, Kading & Kunstle, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Steve Miller, Sioux Falls, South Dakota, Attorney for defendant and appellee.

JOHNS, Circuit Judge.

[¶ 1.] This appeal arises from the trial court's order denying a motion to retroactively modify a foreign child support order which was previously registered and confirmed in South Dakota. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Cynthia A. Barnes (Barnes) and Dennis E. Matzner (Matzner) were divorced in the state of Ohio in 1987. Thereafter, they became involved in extensive post-divorce litigation, mainly concerning child support and visitation for their daughter Anna. In May 1994 they entered into an agreement whereby Barnes agreed to forego child support and in return Matzner agreed to only have contact with Anna by mail. It was also stipulated that if Matzner violated the agreement then his child support, as established in a 1989 order, would be reinstated retroactively to the date of the agreement. Subsequently, an Ohio court indefinitely suspended his support obligation effective March 1994. However, that 1994 court

order did not include the retroactive reinstatement provision.

[¶ 3.] The parties operated pursuant to their agreement and the 1994 order until 1999. At that time, Matzner was a resident of Sioux Falls, South Dakota. Barnes and Anna were residents of the state of Kentucky. In January 1999 Barnes filed the 1994 and 1989 Ohio court orders in South Dakota for registration[1] under our Uniform Interstate Family Support Act (SDCL ch 25–9B). Barnes also sought arrears from the date she first excused Matzner from paying support in the 1994 agreement.

[¶ 4.] Matzner was informed by a notice of registration of order that Barnes was filing both Ohio orders and was also alleging arrearages were owed under the 1989 order. Matzner did not contest registration of the orders but he did request a hearing contesting the claim for arrearages. A copy of the request for hearing was sent to Barnes. Barnes was also sent a copy of the attorney general's response to the request for hearing and a copy of the notice of change of hearing which set a hearing before the Honorable Gene Paul Kean on February 16, 1999. After the hearing the trial court, in an order dated March 1, 1999, confirmed the 1994 Ohio order and provided that "there be no money judgment issued in connection with such and that modification may be pursued if so desired."

[¶ 5.] Barnes did not appeal or seek other relief from this latest order. Rather, one month later, Barnes filed a petition for modification wherein she requested both a prospective and retrospective modification of the 1994 Ohio order. The matter was referred to a referee and a hearing was held on May 17, 1999. Barnes appeared by telephone along with her Kentucky attorney and Matzner appeared personally with his attorney. At that hearing, Barnes alleged that Matzner breached the 1994 order by directly contacting Anna.

[¶ 6.] The referee recommended the matter be transferred to circuit court "for determination of the factual questions of whether support can be ordered based upon Father's alleged violation of the terms of the Ohio Order, and change in circumstances." A transfer to circuit court was ordered by the Honorable William J. Srstka on June 28, 1999; however, before the hearing and by stipulation of the parties the question of arrearages was dismissed without prejudice. An order was subsequently entered establishing a current support obligation effective April 1, 1999.

[¶ 7.] On November 6, 2001, Barnes again asserted her claim for arrearages based on the 1989 order when she filed a motion with the South Dakota courts to establish the child support arrearages. In that motion, Barnes argued that the 1994 order, relieving Matzner of his obligation to support Anna, is unenforceable in both South Dakota and Ohio because it is against public policy. As a result, Barnes argued that the 1989 order establishing child support in the amount of $390 per month was resurrected, and arrearages were owed for the time between March 1994 and April 1999.

[¶ 8.] On January 28, 2002, a hearing was held before the Honorable Stuart L. Tiede concerning Barnes' motion. At that hearing, Judge Tiede ruled from the bench that no arrearages were owed. As to the effect of Judge Kean's order, Judge Tiede found that Judge Kean "was recognizing

---

1. The term "register" is defined in SDCL 25–9B–101(14) as meaning "to record a support order or judgment determining parentage in the appropriate location for the recording or filing of foreign judgments generally or foreign support orders specifically."

the status of the record as it existed at that time. There is no outstanding support and, therefore, there are no arrearages." Judge Tiede determined that the 1994 order was valid and enforceable under both the laws of Ohio and South Dakota and that he was bound to follow it. Judge Tiede also found that as a result of the proceedings before Judge Kean and the resulting March 1999 order, Barnes was barred by the doctrine of res judicata from again seeking a retroactive modification of the 1994 order (which would be in effect a setting aside or nullification of the order). Barnes appeals raising three issues:

Whether Barnes is barred by the doctrine of res judicata from prosecuting a claim for arrearages.

Whether the 1994 Ohio order relieving Matzner from paying child support is void as against public policy.

Whether Matzner owes child support from and after the date he made direct communication with his daughter Anna in violation of his May 1994 agreement with Barnes if the 1994 order is found to be valid.

[¶ 9.] Although failing to file a notice of review and failing to raise the issue before the trial court, Matzner now raises the following issue challenging jurisdiction:

Whether the trial court had subject matter jurisdiction to hear Barnes' claim for arrears, as the same constitutes a retroactive modification of the 1994 order.

## ANALYSIS

### A. SUBJECT MATTER JURISDICTION

[¶ 10.] We begin by addressing Matzner's challenge to subject matter jur-

isdiction.[2] Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void. *In re Application of Koch Exploration Co.*, 387 N.W.2d 530, 536 (S.D.1986). It is "conferred solely by constitutional or statutory provisions ... [and] can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Freeman v. Sadlier*, 1998 SD 114, ¶ 10, 586 N.W.2d 171, 173. Because jurisdictional questions have no time limitation, they can be raised at any time by either the parties or the court sua sponte. *Id.*

[¶ 11.] Matzner contends that the trial court lacked subject matter jurisdiction to retroactively modify the 1994 order. As support for this proposition he cites South Dakota's Uniform Interstate Family Support Act (UFIFSA), SDCL ch 25–9B, and the Federal Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 USC § 1738B. Under both acts the question of whether the courts of this state have jurisdiction to modify a child support order of another state is dependent on the residency of the parties and/or the execution of a written consent in the issuing forum permitting modification in a tribunal of this state. South Dakota's UFIFSA in SDCL 25–9B–611 provides:

(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if § 25–9B–613 does not apply and, after notice and hearing, it finds that:

(1) The following requirements are met:

---

2. Subject matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." Black's Law Dictionary, 857, 7th ed 1999.

(i) The child, the individual obligee, and the obligor do not reside in the issuing state;

(ii) A petitioner who is a nonresident of this state seeks modification; and

(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) An individual party or the child is subject to the personal jurisdiction of the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction which has not enacted this chapter, the written consent of the individual party residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.

(b) Modification of a registered child support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state and the order may be enforced and satisfied in the same manner.

(c) A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state. If two or more tribunals have issued child support orders for the same obligor and child, the order that is controlling and must be recognized under the provisions of § 25–9B–207 establishes the nonmodifiable aspects of the support order.

(d) On the issuance of an order modifying a child support order issued in another state, a tribunal of this state becomes the tribunal of continuing, exclusive jurisdiction.

SDCL 25–9B–611.

[¶ 12.] The federal authority, FFCCSOA 28 UCC § 1738B, provides in relevant part:

(a) **General rule.** The appropriate authorities of each State

(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and

(2) shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (i).

(e) **Authority to modify orders.** A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such child support order pursuant to subsection (i); and

(2) (A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

(i) **Registration for modification.**[3] If there is no individual contestant or child

---

**3.** The term "modification" is not defined in SDCL ch 25–9B but it is defined in 28 USC § 1738(B) as "a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order."

residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

28 USC § 1738B.

[¶ 13.] Here, South Dakota had subject matter jurisdiction at the time of the registration of the Ohio orders to hear a request for a modification irrespective of whether the requested modification was retrospective or prospective. At the time of the registration of the 1994 order in South Dakota, Barnes and Anna were residents of Kentucky and Matzner was a resident of South Dakota. Neither the contestants nor child were residents of the state of Ohio and thus, under the terms of 28 USC § 1738B(i), the 1994 order was required to be registered in South Dakota since this state had jurisdiction over the nonmovant, Matzner, based on his residency. Furthermore, the requirements of 28 USC § 1738B(e)(1) and (2)(A) were met since South Dakota had jurisdiction to make a modified order pursuant to the provisions of subsection (i) and Ohio no longer had continuing, exclusive jurisdiction because it was no longer the child's residence and it was not the residence of any of the contestants.

[¶ 14.] South Dakota is specifically vested with subject matter jurisdiction for a modification under the provisions of SDCL 25–9B–611(a)(1) as the requirements of the statute are met and SDCL 25–9B–613(a) [4] does not apply. None of the parties, including Anna, resided in Ohio at the time of registration; Barnes is

the person seeking modification and she does not reside in this state; and, Matzner was subject to the personal jurisdiction of the courts of this state.

[¶ 15.] We hold that South Dakota had subject matter jurisdiction to hear the request for modification at the time of registration. Furthermore, there is nothing in the record establishing that South Dakota was ever divested of its jurisdiction. In fact, pursuant to the provisions of SDCL 25–9B–611(d), South Dakota became the tribunal of continuing, exclusive jurisdiction once Judge Srstka entered the 1999 order prospectively modifying the 1994 order.

## B. RES JUDICATA.

[¶ 16.] Barnes claims that the trial court erred when it concluded her claim for arrearages was barred by the doctrine of res judicata.

The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action.

For purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. . . . [T]he test is a query into whether the wrong sought to be redressed is the same in both actions. Res judicata, which embodies the concepts of *merger* and *bar,* is therefore broader than the *issue* preclusion of collateral estoppel.

Res judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, to a party in the earlier suit.

---

4.   SDCL 25–9B–613 (a) provides: "If all of the individual parties reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and modify the issuing state's child sup-port order in a proceeding to register that order." This statute does not apply in this case because Barnes did not reside in this state at the time of registration.

Res judicata is premised upon two maxims: A person should not be twice vexed for the same cause and public policy is best served when litigation has a repose. These maxims are served when the parties have had a fair opportunity to place their claims in the prior litigation. *Black Hills Jewelry Mfg. v. Felco Jewel Ind.*, 336 N.W.2d 153, 157 (S.D.1983) (emphasis in original) (citations omitted).

[¶ 17.] The only issue here is whether Judge Kean's March 1, 1999, order reserved the issues of retroactive modification and prospective modification of child support. If that order did not reserve Barnes' right to contest the validity of the 1994 order until a later date, then Barnes was barred by the doctrine of res judicata from later contesting the same by means of a motion for arrearage/retroactive modification.

[¶ 18.] In determining this issue we consider Judge Kean's order in both the legal and factual contexts in which it was entered. When Barnes first claimed arrearages she was contesting the validity of the 1994 order.[5] SDCL 25–9B–607 addresses the burden a party is faced with if they contest the validity or enforcement of a registered order. Failure to meet that burden requires a court to "confirm" the order. That statute provides:

(a) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:

(1) The issuing tribunal lacked personal jurisdiction over the contesting party;

(2) The order was obtained by fraud;

(3) The order has been vacated, suspended, or modified by a later order;

(4) The issuing tribunal has stayed the order pending appeal;

(5) There is a defense under the law of this state to the remedy sought;

(6) Full or partial payment has been made; or

(7) The statute of limitation under § 25–9B–604 precludes enforcement of some or all of the arrearages.

(b) If a party presents evidence establishing a full or partial defense under subsection (a), a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this state.

(c) If the contesting party does not establish a defense under subsection (a) to the validity or enforcement of the order, the registering tribunal shall issue an order confirming the order.

[¶ 19.] If a court confirms the order after hearing, pursuant to SDCL 25–9B–607, further contest of the order is precluded. In delineating this preclusive effect, SDCL 25–9B–608 provides:

Confirmation of a registered order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted at the time of registration.

5. As noted by Matzner's appellate counsel, it may seem odd that Barnes would file the 1994 order for registration and then would be required to contest it. However, she was required to register it since it was a modification of the earlier 1989 order she sought to enforce. SDCL 25–9B–602. If she had not registered it, Matzner had the right to file it for registration at the time of the hearing since it provided a statutory defense to the arrearage claim. SDCL 25–9B–607(a)(3).

[¶ 20.] Judge Kean's March 1, 1999 order reads in pertinent part:

Ordered that the Divorce Decree from the State of Ohio be and hereby is ordered registered [sic] but that there be no money judgment issued in connection with such and that modification may be pursued if so desired.

Unfortunately, we do not have a transcript of the hearing before Judge Kean from which the order resulted. It is clear, however, that Barnes' claim for arrearages was pending at the time of the hearing and the order indicated that no money judgment was to be issued. Based on these circumstances the only reasonable interpretation of this order is that it only permitted future modification of the 1994 order. It would require a strained interpretation of Judge Kean's order to conclude that it reserved the right to contest the 1994 order. This would be unwarranted in light of the procedural posture of this case and the language of SDCL 25–9B–607 and 608, which required Barnes to contest the 1994 order at the time of the confirmation hearing and precluded further contest once the order was confirmed.

[¶ 21.] Since we affirm the trial court on this issue, we do not address Barnes' other issues.

## C. APPELLATE ATTORNEY FEES

[¶ 22.] Both parties seek appellate attorney fees pursuant to the provisions of SDCL 15–17–38 and 15–26A–87.3. Matzner also seeks fees pursuant to SDCL 15–17–51. SDCL 15–26A–87.3 sets forth the substantive content and procedural requirements of a motion for appellate attorney fees when such are allowable. SDCL 15–17–38 precludes the taxation of attorney fees as a disbursement except in those cases where it is allowed by a specific statute. It also provides that a "court, if appropriate, in the interests of justice, may award payment of attorney's fees in all cases of divorce, annulment of marriage, determination of paternity, separate maintenance, support or alimony." SDCL 15–17–38.

[¶ 23.] SDCL 15–17–51 allows for disbursements in certain circumstances when an action is dismissed. That statute provides:

If a civil action or special proceeding is dismissed and if the court determines that it was frivolous or brought for a malicious purposes, the court shall order the party whose cause of action or defense was dismissed to pay part or all expenses incurred by the person defending the matter, including reasonable attorneys' fees.

On its face SDCL 15–17–51 appears to only apply to proceedings where an action is dismissed by a trial court or by this Court when it is exercising its original jurisdiction. However, based on our prior precedent holding that in domestic relations cases "[a]ttorney fees on appeal may be granted, 'regardless of the success of the party requesting them, unless that party has proceeded in bad faith, or has brought a frivolous or unjustified action' " we do not address this issue. *Jacobson v. Jacobson*, 2000 SD 60,¶ 30, 611 N.W.2d 210, 218 (citing *Peterson v. Peterson*, 434 N.W.2d 732, 738 (S.D.1989)).

[¶ 24.] We have also recognized in domestic relation cases that "[i]n determining whether fees for the appeal are proper, we must 'consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case.' " *Id.* From the record, we know that as of May 2002, Barnes' annual income was $61,183 and Matzner's annual income was $57,758. We also know that Barnes had over $9,800 in annual income from interest and rental property. Thus, we can conclude that the parties have the ability to pay at least

some of the other's attorney fees. The second step of our analysis is to examine the fee requests from the perspective of whether the party's appellate arguments carried any merit. Considering this factor we cannot justify an award to Barnes. Matzner asks for $5,141 which appears to be appropriate for the amount and quality of the work his attorney performed in defending this appeal. Yet, considering that his subject matter jurisdiction argument was without merit, we award him $2,500.

### CONCLUSION

[¶ 25.] We hold that the trial court had subject matter jurisdiction; the trial court order is affirmed; and Matzner is awarded attorney fees in the amount of $2,500.

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 27.] JOHNS, Circuit Judge, for SABERS, Justice, disqualified.