#24875-rev & vac-RWS

**2009 SD 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CHRISTI L. MACK f/k/a
CHRISTI L. STURM,                                    Petitioner and Appellant,

v.

JOSEPH A. TRAUTNER,                                  Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. ROEHR
Judge

\* \* \* \*

DOUGLAS P. CUMMINGS, JR. of
East River Legal Services
Sioux Falls, South Dakota                     Attorneys for petitioner
                                              and appellant.

DAVID R. STRAIT of
Austin, Hinderaker, Hopper,
 Strait & Benson, LLP
Watertown, South Dakota                       Attorneys for respondent
                                              and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 3, 2008

OPINION FILED **03/04/09**

#24875

SABERS, Retired Justice.

[¶1.] Joe Trautner was awarded temporary custody of his two children on April 28, 2006, and his child support obligation to Christi Mack (f/k/a Christi Sturm) was terminated, effective April 30, 2006. On July 14, 2006, the circuit court awarded Joe legal and physical custody of his children. One year later in July 2007, Joe filed a petition to modify child support, requesting not only current and future child support from Christi, but also back child support for the period of May 2006 to July 2007. After the referee informed him that past child support would not be considered, Joe waited until December 5, 2007, to file his claim with the circuit court for back child support. The circuit court granted Joe's request and ordered Christi to pay $6,150 in back child support. Christi appeals, claiming the circuit court retroactively modified her child support obligation and that res judicata barred Joe's claim. We agree Joe's claim is barred by res judicata, and accordingly reverse and vacate the circuit court's judgment.

**FACTS**

[¶2.] Joe and Christi were never married, but had two children together: a son born January 23, 1996, and a daughter born April 7, 1997. After their relationship ended in 1997, Christi was granted primary custody of the children, subject to Joe's rights of reasonable visitation, and Joe was ordered to pay $475 per month in child support. In July 2003, Joe's child support obligation was modified to $230 per month, effective September 1, 2003.

[¶3.] In July 2005, Joe filed a motion for physical custody of the children. A custody evaluation was ordered, and Bradley D. Woldt, Ph.D., was appointed to

-1-

complete the evaluation. Over the next several months, Christi failed to cooperate with Dr. Woldt. On April 10, 2006, Dr. Woldt informed the parties that he refused to proceed with the evaluation due to Christi's noncompliance. On April 20, 2006, Joe filed a motion for Christi to be found in contempt of court, and he again moved for a change of custody. A hearing was held on April 28, 2006, before Circuit Court Judge Ronald K. Roehr. Judge Roehr found Christi in contempt of court and ordered her to jail until she purged herself of contempt by cooperating with the custody evaluator. Joe was awarded temporary custody of the children, and in an interim order dated May 17, 2006, Joe's monthly child support obligation of $230 per month was terminated, effective April 30, 2006.

[¶4.] On May 5, 2006, the court appointed Gabriel J. Mydland, Ph.D., to conduct the custody evaluation. Christi was again uncooperative. Dr. Mydland sent Judge Roehr a letter dated June 9, 2006, informing him of Christi's noncompliance.

[¶5.] On June 12, 2006, Joe filed another motion for contempt against Christi for failing to cooperate and complete the custody evaluation with the new evaluator. Joe also moved for permanent custody of the children. The motions were heard on July 7, 2006. Thereafter, the court entered an amended interim order dated July 14, 2006, which recognized that Christi was already in contempt of court, and further granted legal and physical custody of the children to Joe even though the custody evaluation had not yet been completed. At this time, Joe did not request nor did the circuit court establish a child support obligation for Christi. The resulting order was never appealed.

[¶6.] One year later on July 14, 2007, Joe filed a petition to modify child support with the Office of Child Support Enforcement. A hearing was conducted on August 7, 2007. Joe requested both back child support from May 2006 to July 2007, as well as current and future child support. The referee informed Joe that she was only considering current and future child support, and that he would need to make his claim for past child support with the circuit court. The referee thereafter established Christi's child support obligation at $410 per month, effective August 1, 2007. Neither party appealed the recommendation, and it was accepted by the circuit court in its order dated August 31, 2007. Joe never appealed this order.

[¶7.] On October 25, 2007, the custody evaluation report was issued. In it, Dr. Mydland recommended that the amended interim order granting permanent custody to Joe be made permanent.

[¶8.] On December 5, 2007, Joe filed a motion with the circuit court to again establish child support for the May 2006 through July 2007 period. Two months later, Joe and Christi entered into a parenting stipulation which provided for joint legal custody between them, and vested primary physical custody and decision-making authority in Joe. Judge Roehr signed an order dated February 8, 2008, directing the parties to follow the parenting stipulation.

[¶9.] On February 12, 2008, the court considered the issue of back child support. Judge Roehr found that the May 17, 2006 interim order terminated Joe's child support obligation to Christi, but failed to establish a child support obligation for Christi for the May 2006 through July 2007 period. Christi argued that SDCL 25-7-7.3 prohibited retroactive modification of the May 17, 2006 order. Joe

countered this argument by claiming that the court would not be *modifying* an order, as there was no order in place. He explained that his motion was to *establish* a child support obligation for Christi. Judge Roehr agreed with Joe and entered a judgment of $6,150[1] on February 21, 2008, against Christi for back child support. On February 27, 2008, Christi filed a motion to reconsider pursuant to SDCL 15-6-59(a), claiming this judgment was barred by res judicata. Her motion was denied on April 9, 2008. Christi appeals the judgment to this Court, asserting the judgment was an improper modification of child support and that it was barred by res judicata. Because we agree that res judicata precluded this judgment, we do not reach the issue of whether this was an improper modification of child support.

## STANDARD OF REVIEW

[¶10.] The circuit court's decision that res judicata did not bar Joe's December 5, 2007 motion for back child support is a conclusion of law. Conclusions of law are reviewed by this Court under the de novo standard of review. White v. Bain, 2008 SD 52, ¶17, 752 NW2d 203, 208 (quoting Glover v. Krambeck, 2007 SD 11, ¶17, 727 NW2d 801, 805); Wells v. Wells, 2005 SD 67, ¶11, 698 NW2d 504, 507 (citation omitted).

[¶11.] **Whether res judicata barred Joe's request for back child support.**

[¶12.] In *Barnes v. Matzner*, we reiterated the boundaries of the doctrine of res judicata as set forth in *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*:

---

1. This amount was based on Christi's monthly child support obligation of $410, established in the August 31, 2007 circuit court order.

> The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action.
>
> For purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce . . . . [T]he test is a query into whether the wrong sought to be redressed is the same in both actions. Res judicata, which embodies the concepts of *merger* and *bar*, is therefore broader than the *issue* preclusion of collateral estoppel.
>
> Res judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, to a party in the earlier suit.
>
> Res judicata is premised upon two maxims: A person should not be twice vexed for the same cause and public policy is best served when litigation has a repose. These maxims are served when the parties have had a fair opportunity to place their claims in the prior litigation.

2003 SD 42, ¶16, 661 NW2d 372, 377-78 (quoting Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc., 336 NW2d 153, 157 (SD 1983) (emphasis in original) (citations omitted)). *See also, e.g.,* Chapman v. Chapman, 2006 SD 36, ¶¶13-15, 713 NW2d 572, 576-77; Faulk v. Faulk, 2002 SD 51, ¶16, 644 NW2d 632, 635; Moe v. Moe, 496 NW2d 593, 595 (SD 1993); Hahne v. Hahne, 444 NW2d 360, 362-63 (SD 1989). Furthermore, for res judicata to bar a subsequent claim, "the earlier court must have had jurisdiction and its decision must be final and unreversed." *Black Hills Jewelry Mfg. Co.*, 336 NW2d at 157 (citing Keith v. Willers Truck Serv., 64 SD 274, 266 NW 256 (1936)).

[¶13.] During the August 2007 child support proceeding, Joe asked for child support back to May 2006. The referee denied his request, informing Joe that she was only considering current and future child support. Thereafter, the referee submitted her recommendation to the circuit court. Upon no objection by either party, the circuit court adopted the recommendation and it became a court order on

August 31, 2007. Joe never appealed the court order, and therefore, it became the final order of the court regarding Christi's child support obligation.

[¶14.]	The issue of Christi's alleged child support for the period of May 2006 through July 2007 was identical in both the child support proceeding in August 2007, and the hearing before the circuit court on February 12, 2008. The parties to these two proceedings were identical. The final judgment on the merits of Joe's request for that child support was entered when the August 31, 2007 order became final. And both parties had a full and fair opportunity to raise these issues and litigate them in the prior proceeding. *See Barnes, supra* ¶12.

[¶15.]	For a claim to be barred by res judicata, the claim need not have been actually litigated at an earlier time. Rather, the parties only need to have been provided "a fair *opportunity* to place their claims in the prior litigation." *Black Hills Jewelry Mfg. Co.*, 336 NW2d at 157 (emphasis added). Here, Joe actually placed his claim in the prior litigation by requesting the referee to grant him back child support. Unfortunately for him, his claim was denied. Even more unfortunate for Joe was that he failed to exercise his right to appeal, thus allowing the circuit court's order to become the final order on the matter. Under the doctrine of res judicata, this final order was not amenable to relitigation.

[¶16.]	Our case law is instructive. In *Faulk*, 2002 SD 51, 644 NW2d 632, Lori and Scott Faulk were divorced on August 17, 1982. Lori was granted custody of both children and Scott was ordered to pay child support. Soon thereafter, Scott became delinquent in his payments. Lori applied for and received Aid to Dependent Children (ADC) from the State of South Dakota for a period of time in 1982, and

again from February 23, 1984, through August 28, 1990. In 1994, Lori obtained an administrative judgment against Scott for child support arrearages in the amount of $15,966. In 1996, Scott moved to set aside this judgment. During the hearing held in June 1996, the court limited the issue to "whether Lori had a 'right to seek a judgment [for] any alleged arrearages in child support during the time [she received ADC] from the State of South Dakota.'" *Id.* ¶6, 644 NW2d at 633-34. Because Lori had assigned her support rights to the State for the time periods she received ADC, the court found that she had waived her interest in those arrearages. In 2000, Lori brought another claim for arrearages of $39,300 for the years of October 1983 to October 1994, with the exception of the time periods during which she received ADC. The circuit court denied Lori's claim on the basis of res judicata and laches.

[¶17.] On appeal to this Court, Lori amended her claim for arrearages to include only the years of August 28, 1990, through November 10, 1994. We held that res judicata did not apply because the 1996 hearing was limited to the issue of arrearages during the periods when Lori received ADC. Therefore, Lori did not have the opportunity to previously assert her claim for arrearages from 1990 through 1994. This case is distinguishable. Here, not only was Joe provided the opportunity to assert his claim for back child support, but he actually took advantage of it. His error, however, lies with his failure to appeal the adverse decision. That failure should have barred relitigation in the circuit court on February 12, 2008.

[¶18.]     Joe testified that he waited to file the petition to modify child support because he assumed the proceedings were "going to be done and over quickly."[2] However, if this Court allowed petitioners to sit on their claims for substantial periods of time, child support litigation would never be final. We do not condone Christi's uncooperative behavior in completing the custody evaluation, but the law prevents the courthouse doors from swinging open to relitigate an issue that was raised before a court of competent jurisdiction[3] months earlier where that court's decision was final and unreversed. For these reasons, we hold the circuit court erred as a matter of law by not declaring this issue res judicata.

[¶19.]     Joe moved this Court for attorney's fees under SDCL 15-26A-87.3 and SDCL 15-17-38. Because he has not prevailed, his motion is denied.

[¶20.]     Reversed and vacated.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

2.     The speed of the proceedings has no effect on the necessity to request child support.

3.     Although the matter was originally raised before a referee, referees are a fact-finding arm of the circuit court and are only authorized to make a recommendation to a circuit court that obviously is a court of competent jurisdiction to consider child support arrearages. *See* SDCL 15-6-53 and 25-7A-22.